# Exhibit 1

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**DORIS BANKS**, *et al.*,

    Plaintiffs,

*v.*

**EIDP, INC.**, *et al.*,

    Defendants.

C.A. No. 1:19-cv-01672-JLH-SRF

**JURY TRIAL DEMANDED**

**PLAINTIFFS' NARROWED SET OF INTERROGATORIES
DIRECTED TO DEFENDANT, EIDP, INC.**

***PLEASE TAKE NOTICE*** that, pursuant to Magistrate Judge Fallon's order given at the July 9, 2024 hearing, and in advance of tomorrow's Meet and Confer, Plaintiffs present the following narrowed discovery request directed at ascertaining the information sought to obtain class certification.

## INSTRUCTIONS

1. These Interrogatories cover all information known to or available to Defendant and its agents or attorneys, and all information in documents in its actual or constructive possession, custody, or control, whether prepared by it or any other persons.

2. All verbs used herein shall be construed to include all tenses.

3. The singular shall include the plural and vice versa, and the conjunctive shall include the disjunctive and vice versa, in order to give these interrogatories their broadest scope.

4. With respect to each document required to be identified by these Interrogatories to which a claim of privilege is asserted, separately state the following:

    a. The type of document (e.g., letter, memorandum, note, etc.);
    b. Its date;
    c. The name, business address and present position of its author(s);

  d. The position of its author(s) at the time the document was prepared;

  e. The name, business address and present position of its addressee(s) and all other recipients of the document

  f. The position of its addressee(s) and all other recipients at the time the document was prepared and at the time it was received;

  g. A general description of the subject of the document;

  h. The basis of the claim of privilege; *and*

  i. If the basis for the claim of privilege is the work product doctrine, identify the proceeding for which the document was prepared.

5. Where the term "**describe**" is used in the interrogatories below, this term includes a request for a complete description and explanation of the facts, circumstances, and analysis, opinion and other information CONCERNING the subject matter of a specific interrogatory.

6. Where the term **"identify"** is used in the interrogatories below, this term includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information CONCERNING the subject matter of a specific interrogatory and also includes a request for the following information, to the extent known:

  a. with respect to a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer;

  b. with respect to a natural person, his or her name, business address and telephone number, employer, and title or position; *and*

  c. with respect to a DOCUMENT or other item of physical evidence, a description of the DOCUMENT or item of physical evidence with sufficient specificity to enable the party propounding these Interrogatories to identify such DOCUMENT or item of physical evidence in a motion to compel its production or availability for inspection.

7. With respect to any non-documentary information or communications required to be identified or described by these Interrogatories as to which a claim of privilege is asserted, separately state the following:

    a. The basis of the claim of privilege;

    b. A general description of the subject of the information or communication;

    c. The identities of all persons with knowledge of the information or communication;

    d. The date of the communication;

    e. The identities of all persons present when the communication took place; *and*

    f. The type of communication (e.g. face-to-face conversation, telephone conversation) and the location of each party to the communication at the time it took place.

8. Unless otherwise specified, these interrogatories are limited to the time period from 1950 to the present, and including the date of service of these interrogatories.

## **DEFINITIONS**

1. As used herein, the term **"PERSON(S)"** refers to any natural person, firm, agency, organization, association, partnership, joint venture, corporation, public entity, or any other kind of business, legal or governmental entity or association.

2. As used herein, the term **"DOCUMENT(S)"** shall have the broadest meaning possible and shall mean all documents, electronically stored information, and tangible things discoverable under Rule 34 of the Delaware Superior Court Rules of Civil Procedure, including without limitation: all writings and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to originals (or identical duplicates when originals are not available), drafts, computer-stored and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original,

correspondence, memoranda, reports, notes, minutes, contracts, agreements, leases, subleases, lease assignments, amendments, books records, checks, vouchers, permits, invoices, purchase orders, hazardous waste manifests, timesheets, bills of lading, receipts, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, site plans, floor plans, blueprints, equipment lists, maps, diagrams, drawings, photographs, videographs, sketches, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters emails, electronic or mechanical records, facsimiles, telegrams and telecopiers, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate DOCUMENT within the meaning of this term. DOCUMENTS shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. DOCUMENTS expressly include all ELECTRONIC RECORDS.

      3.     As used herein, the term **"COMMUNICATION(S)"** refers to any act, action, oral speech, written correspondence, contact, expression of words, thoughts, ideas, transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, email, facsimile, text message, instant message, recorded message or any other process—electronic, computer, or otherwise. All such communications in writing shall include, without limitation, printed, typewritten, handwritten, electronic, or other DOCUMENT(S).

4. **"DISTRIBUTING DEFENDANTS"** means any current or former defendant in this class action that currently or formerly distributed PFC, PFOA, PFOS, including but not limited to Atotech USA, LLC, McDermid, and their predecessors, subsidiaries, or parent companies.

5. As used herein, the phrase **"INTERNAL COMMUNICATION(S)"** means COMMUNICATIONS between or among officers, agents, affiliates, and/or employees of Defendant.

6. As used herein, the terms **"RELATING TO" or "CONCERNING"** shall include within their meaning "containing," "alluding to," "responding to," "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

7. As used herein, the term **"PLAINTIFFS"** refers to any and all named Plaintiffs in the above-captioned action, any and all members of the class that are similar situated to the named Plaintiffs, and includes all PERSONS acting or purporting to act at the direction of or on behalf of the named Plaintiffs.

8. As used herein, the terms **"EIDP", "DuPont", "THE CHEMOURS COMPANY", "CHEMOURS CO.", "YOU," "YOUR,"** and **"DEFENDANT"** refers to Defendant EIDP, Inc., DuPont, the Chemours Company, and the Chemours Co. and includes all past and present officers, directors, employees, predecessors, successors, affiliates, agents, servants, and representatives, and all other PERSONS acting or purporting to act at the direction of or on behalf of Defendant EIDP, Inc.

9. **"ADVERSE EFFECT(S)"** means any possible or actual effect, impact, alteration, and/or change that causes or results in an impact that is harmful or negative.

10. **"PERFLUORINATED MATERIALS," "PFC,"** or **"PFCs"** refers to C4 through C-16, FC-143, PFHS, FOSA, PFPeA, PFHxA, PFDS, PFHpA, PFNA, PFDA, PFUnA, PFDoA, PFTA, PFBS, PFHxS, PFOS and its homologs (F(CF2)ySO3) and PFOA and its homologs (F(CF2)yCO2), along with PFCs that are contained in any of these compounds, PFCs that are used in the manufacture of any product, PFCs that are produced as byproducts of any process, and PFCs that result from the degradation of any of these compounds.

11. **"PFAS"** refers to all per- and polyfluoroalkyl substances, including without limitation PFOA and PFOS and any compound that contains or breaks down into PFOA or PFOS.

12. **"PFOA"** refers to perfluorooctanoic acid and any compound that contains or breaks down into PFOA.

13. **"PFOS"** refers to perfluorooctanesulfonic acid/ perfluorooctane sulfonate and any compound that contains or breaks down into PFOS.

14. **"PFOA/PFOS-CONTAINING PRODUCTS", "PFOA/PFOS PRODUCTS", "PFC PRODUCT", "PFAS PRODUCT"** means any product containing PFOA and/or PFOS or any compound that contains or breaks down into PFOA or PFOS, including any product that forms a component part of or that is subsequently incorporated into another product.

15. As used herein, the term **"SALE", "SELL"** or **"SOLD"** means the transfer of title, exchange pursuant to an agreement, distribution, marketing or sale of PFOA and/or PFOS at both wholesale and retail level.

16. **"MANUFACTURING DEFENDANTS"** means any current or former defendant in this class action that currently or formerly produced or manufactured PFC, PFOA, PFOS, including but not limited to 3M Company, EIDP, Inc. f/k/a E.I. Du Pont De Nemours and Company, The Chemours Company, and their predecessors, subsidiaries, or parent companies.

17. As used herein, the term **"THE GOVERNMENT"** or **"GOVERNMENT"** means any branch of the United States military; any agency, department, authority, board, or bureau of the United States; and/or any officer, director, or employee of any such U.S. governmental entity.

18. **"USEPA", "EPA"** means the United States Environmental protection agency and/or any officer, director, or employee of such entity.

19. **"DPH"** means the Delaware Division of Public Health and/or any officer, director or employee of such entity.

20. **"DNREC"** means the Delaware Department of National Research and Environmental Control and/or any officer, director or employee of such entity.

21. As used herein, **"TOWN OF BLADES"** refers to the Town of Blades located in Sussex County Delaware 19973.

22. **"ENVIRONMENTAL EFFECT(S)"** means any possible or actual effect, impact, alteration, and/or change to any environmental resource, including but not limited to air, land (including recreational, transport, agricultural, residential, and/or commercial), soil, sediments, water (including surface water, groundwater, drinking water, and/or other aquatic bodies), and/or biota (including but not limited to plants and animals, including wildlife and aquatic organisms).

23. **"HANDLE(D)" or "HANDLING"** shall mean to possess, store, use, operate, maintain, touch, place, move, or disturb in any manner.

24. **"HUMAN HEALTH EFFECT(S)"** means any possible or actual effect, impact, alteration, change, ailment, sickness and/or disease relating to humans, including but not limited to effects on human fetal development and the bioaccumulation and/or biopersistence of a chemical compound in the human body.

25. **"TOXICOLOGICAL EFFECT(S)"** means any possible or actual effect, impact, change, and/or alteration (including but not limited to cellular, biochemical, and/or macromolecular effects) relating to the toxicity, poisonousness, and/or harm of chemicals or substances to living organisms.

## INTERROGATORIES

1. Identify each PERSON who has supplied information used in answering these interrogatories and specify the interrogatories for which each PERSON is responsible.

2. Identify all PFC, PFOA, PFOS-CONTAINING PRODUCTS YOU manufactured for SALE to the DISTRIBUTING DEFENDANTS and/or Peninsula Plating, Procino Enterprise and their predecessors, subsidiaries, or parent companies, stating for each: the trade name under which it was SOLD; the dates during which it was manufactured for SALE; and the percentage of each chemical component contained within said product.

3. Identify when was each PFC, PFOA, PFOS CONTAINING PRODUCT distributed to the DISTRIBUTING DEFENDANTS and/or Peninsula Plating, Procino Enterprise and their predecessors, subsidiaries, or parent companies.

4. Identify the distributor or distributors for YOUR PFOA/PFOS CONTAINING PRODUCTS that sold to the DISTRIBUTING DEFENDANTS and/or Peninsula Plating, Procino Enterprise and their predecessors, subsidiaries, or parent companies.

| | |
|---|---|
| Dated: July 17, 2024 | Respectfully submitted, |
| | |
| | /s/ *Thomas C. Crumplar* |
| *Of Counsel:* | Thomas C. Crumplar (DE # 0942) |
| | David T. Crumplar (DE # 5876) |
| Paul J. Napoli, Esq. | Patrick C. Gallagher (DE # 5170) |
| *(Admitted Pro Hac Vice)* | **JACOBS & CRUMPLAR, P.A.** |
| Coral M. Odiot Rivera, Esq. | 10 Corporate Circle |
| *(Admitted Pro Hac Vice)* | Suite 301 |
| Veronica Vazquez Santiago, Esq. | New Castle DE  19720-2418 |
| *(Admitted Pro Hac Vice)* | Tel. (302) 656-5445 |
| Gabriel M. Vazquez, Esq. | tom@jcdelaw |
| *(Admitted Pro Hac Vice)* | davy@jcdelaw.com |
| **NS PR LAW SERVICES LLC** | pat@jcdelaw.com |
| 1302 Avenida Ponce de León | |
| San Juan PR  00907-3982 | *Counsel for Plaintiffs* |
| Tel. (833) 271-4502 | |
| pnapoli@nsprlaw.com | |
| codiot@nsprlaw.com | |
| vvazquez@nsprlaw.com | |
| gvazquez@nsprlaw.com | |