# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CANDY CAPORALE, et al.,

          Plaintiffs,

    v.

EIDP, INC., et al.,

          Defendants.

C.A. No. 19-1672-JLH-SRF

**PUBLIC VERSION**

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Lauren Goldman, *Pro Hac Vice*
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Tel.  (212) 351-4000
lgoldman@gibsondunn.com

Amir C. Tayrani, *Pro Hac Vice*
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Tel.  (202) 955-8500
atayrani@gibsondunn.com

Bradley J. Hamburger, *Pro Hac Vice*
Daniel R. Adler, *Pro Hac Vice*
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.  (213) 229-7000
bhamburger@gibsondunn.com
dadler@gibsondunn.com

Catherine A. Gaul (DE # 4310)
Andrew Colin Mayo (DE # 5207)
Randall J. Teti (DE # 6334)
**ASHBY & GEDDES, P.A.**
500 Delaware Avenue – Floor 8
Wilmington, DE 19801
Tel. (302) 654-1888
cgaul@ashbygeddes.com
amayo@ashbygeddes.com
rteti@ashbygeddes.com

Thomas R. Waskom, *Pro Hac Vice*
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Tel. (213) 532-2176
twaskom@Hunton.com

Michael J. Bisceglia, *Pro Hac Vice*
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, VA 23219
Tel. (804) 788-8200
mbisceglia@Hunton.com

*Counsel for Defendant Atotech USA, LLC*

Kelly E. Farnan (DE # 4395)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Tel. (302) 651-7700
farnan@rlf.com

Christopher Essig, *Pro Hac Vice*
Reid Smith, *Pro Hac Vice*
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel. (312) 558-5600
cessig@winston.com
rfsmith@winston.com

*Counsel for Defendant 3M Company*

Daniel M. Silver (DE # 4758)
**McCARTER & ENGLISH, LLP**
Renaissance Centre
405 North King Street – Floor 8
Wilmington, DE 19801
Tel. (302) 984-6300
dsilver@mccarter.com

Andy Carpenter, *Pro Hac Vice*
Brent Dwerlkotte, *Pro Hac Vice*
**SHOOK HARDY AND BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
acarpenter@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendant EIDP, Inc.*

Brian D. Tome (DE # 5300)
**REILLY, McDEVITT & HENRICH, P.C.**
1013 Centre Road – Suite 210
Wilmington, DE 19805
Tel. (302) 777-1700
btome@rmh-law.com

*Counsel for Defendant Blades Development LLC*

Gerry Gray (DE # 2742)
**DOROSHOW, PASQUALE, KRAWITZ & BHAYA**
14 Village Square
Smyrna, DE 19977
Tel. (302) 508-2140
GerryGray@dplaw.com

*Counsel for Defendant Procino Plating, Inc.*

Kaan Ekiner (DE # 5607)
**COZEN O'CONNOR**
1201 North Market Street – Suite 1001
Wilmington, DE 19801
Tel. (302) 295-2035
kekiner@cozen.com

Michael de Leeuw, *Pro Hac Vice*
Matthew L. Elkin, *Pro Hac Vice*
Maria Ermakova, *Pro Hac Vice*
**COZEN O'CONNOR**
3 WTC, 175 Greenwich Str., 55th Floor
New York, NY 10007
mdeleew@cozen.com
melkin@cozen.com
mermakova@cozen.com

*Counsel for Defendant MacDermid, Inc.*

Dated:  March 7, 2025

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 3

LEGAL STANDARD.................................................................................................. 5

ARGUMENT ........................................................................................................... 5

I.    Plaintiffs Have Not Shown That the Classes Are Ascertainable ........................................ 5

II.   Plaintiffs' Proposed Class Definitions Are Impermissibly Fail-Safe ............................. 10

III.  Plaintiffs Have Not Met Their Burden to Prove Common Issues Will Predominate Over Individualized Issues.............................................................................................. 11

    A.   Whether Each Resident or Property Was Exposed to PFAS Is an Individualized Issue..................................................................................................................... 12

    B.   Whether Each Class Member Has Suffered Injury Is an Individualized Issue............. 17

    C.   Whether Any PFAS Contamination Came from a Defendant or an Alternative Source Is an Individualized Issue................................................................................ 23

    D.   Whether A Given Property Is Entitled to Stigma Diminution in Value Damages Is an Individualized Issue ..................................................................................... 24

IV.   Plaintiffs Have Not Shown That a Class Action Is Superior to Individual Actions ......... 25

V.    Plaintiffs Are Not Typical of the Classes They Seek to Represent ................................. 26

    A.   Ms. Caporale Is Not Typical of the Proposed Personal-Injury Class ......................... 27

    B.   Mr. Davis, Mr. Sullenberger, and Ms. Wootten Are Not Typical of the Proposed Property-Damage Class........................................................................... 27

VI.   The Court Should Not Certify a Liability-Only Issues Class ......................................... 28

CONCLUSION......................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Arch v. Am. Tobacco Co.*,
  175 F.R.D. 469 (E.D. Pa. 1997) ........................................................................19, 25

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ...................................................................................22

*Baker v. Croda Inc.*,
  2021 WL 7209363 (D. Del. Nov. 23, 2021) ..........................................................17

*Barasich v. Shell Pipeline Co., LP*,
  2008 WL 6468611 (E.D. La. June 19, 2008) .........................................................11

*In re Baycol Prods. Litig.*,
  218 F.R.D. 197 (D. Minn. 2003) ............................................................................26

*Benefield v. International Paper Co.*,
  270 F.R.D. 640 (M.D. Ala. 2010) ...........................................................................9

*Brandywine Smyrna, Inc. v. Millennium Builders, LLC*,
  2010 WL 1380252 (Del. Super. Apr. 8, 2010) .......................................................24

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) .................................................................................22

*Brown v. Saint-Gobain Performance Plastics*,
  2023 WL 9023158 (D.N.H. Dec. 29, 2023) ...........................................................21

*Butela v. Midland Credit Mgmt. Inc.*,
  341 F.R.D. 581 (W.D. Pa. 2022) ...........................................................................10

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ................................................................................6, 7

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...........................................................................................12, 22

*Cotromano v. United Techs. Corp.*,
  2018 WL 2047468 (S.D. Fla. May 2, 2018) ...........................................21, 22, 23, 25

*Farny v. Bestfield Builders, Inc.*,
  391 A.2d 212 (Del. Super. 1978) ...........................................................................25

*Fisher v. Ciba Specialty Chems. Corp.*,
  238 F.R.D. 273 (S.D. Ala. 2006) ......................................................................17, 24

*Gates v. Rohm & Haas Co.*,
  265 F.R.D. 208 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011) ............... *passim*

*Gates v. Rohm & Haas Co.*,
 655 F.3d 255 (3d Cir. 2011)....................................................................1, 18, 22, 29, 30

*Georgine v. Amchem Prods., Inc.*,
 83 F.3d 610 (3d Cir. 1996)................................................................................. *passim*

*Giordano v. Solvay Specialty Polymers USA, LLC*,
 522 F. Supp. 3d 26 (D.N.J. 2021) ...........................................................................26

*Haggart v. Endogastric Sols., Inc.*,
 2012 WL 2513494 (W.D. Pa. June 28, 2012) ..........................................................11

*Hayes v. Wal-Mart Stores, Inc.*,
 725 F.3d 349 (3d Cir. 2013)..................................................................................5, 6

*Helm v. 206 Mass. Avenue, LLC*,
 107 A.3d 1074 (Del. 2014) ......................................................................................28

*Higgins v. Huhtamaki, Inc.*,
 2023 WL 6516538 (D. Me. Oct. 5, 2023) .................................................................26

*Hudson v. Old Guard Ins. Co.*,
 3 A.3d 246 (Del. 2010) ............................................................................................29

*In re Hydrogen Peroxide Antitrust Litig.*,
 552 F.3d 305 (3d Cir. 2008).....................................................................................22

*LaBauve v. Olin Corp.*,
 231 F.R.D. 632 (S.D. Ala. 2005) ...................................................................21, 23, 24

*Lafferty v. Sherwin-Williams Co.*,
 2018 WL 3993448 (D.N.J. Aug. 21, 2018) .................................................................8

*Leary v. Oswald*,
 2006 WL 3587249 (Del. Super. Oct. 25, 2006) ........................................................24

*Marcus v. BMW of N. Am., LLC*,
 687 F.3d 583 (3d Cir. 2012).....................................................................................5, 7

*Messner v. Northshore Univ. HealthSystem*,
 669 F.3d 802 (7th Cir. 2012) .................................................................................1, 10

*Monk v. Virgin Islands Water & Power Auth.*,
 53 F.3d 1381 (3d Cir. 1995).....................................................................................28

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 259 F.3d 154 (3d Cir. 2001).....................................................................................26

*Nix. v. Chemours Company FC*,
 2023 WL 6471690 (E.D.N.C. Oct. 4, 2023) ........................................................20, 21

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
 725 F.3d 244 (D.C. Cir. 2013)..................................................................................22

*Randleman v. Fid. Nat. Title Ins. Co.*,
   646 F.3d 347 (6th Cir. 2011) ....................................................10

*Reilly v. Gould, Inc.*,
   965 F. Supp. 588 (M.D. Pa. 1997).............................................15

*Rhodes v. E.I. du Pont de Nemours & Co.*,
   253 F.R.D. 365 (S.D. W. Va. 2008)..........................................13

*Rowe v. E.I. DuPont de Nemours & Co.*,
   2008 WL 5412912 (D.N.J. Dec. 23, 2008)............................ *passim*

*Rowe v. E.I. Dupont De Nemours & Co.*,
   262 F.R.D. 451, 463 (D.N.J. 2009)...........................................16

*Russell v. Ed. Comm'n for Foreign Med. Graduates*,
   15 F.4th 259 (3d Cir. 2021).......................................................29

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)..........................................26, 27, 28

*In re TMI*,
   67 F.3d 1103 (3d Cir. 1995).................................................12, 17

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)..............................................................2, 17, 18

*United States v. Anderson*,
   669 A.2d 73 (Del. 1995) ............................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................2, 5, 22

*Ward v. Apple, Inc.*,
   784 F. App'x 539 (9th Cir. 2019) ..............................................22

*Williams v. Pa. Dept. of Corrs.*,
   2022 WL 1295796 (W.D. Pa. April 5, 2022)............................18

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ....................................................10

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
   80 F. Supp. 3d 610 (E.D. Pa. 2015) .........................................10

## Other Authorities

*Blades, Del.*, U.S. CENSUS BUR., https://tinyurl.com/38dx6z63 ....................................................7

## Rules

Fed. R. Civ. P. 23 ......................................................................................11

## INTRODUCTION

Classes seeking damages for personal injuries and diminished property values are poor candidates for certification because these claims almost invariably present highly individualized questions not susceptible to classwide resolution.  That is why courts often refuse to certify classes asserting tort claims stemming from alleged environmental contamination.  *E.g.*, *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011).  This case is no exception.  Plaintiffs allege that there are per- and polyfluoroalkyl substances (PFAS) in the water in Blades, Delaware (Blades); PFAS harmed their health and reduced their property values; and Defendants' alleged negligence caused that purported harm.  There are five problems with adjudicating those claims on a classwide basis.

*First*, Plaintiffs propose no way to identify who belongs in their classes.  The personal-injury class includes those who lived in Blades since 1985, drank the water, and were exposed to "hazardous chemicals" due to Defendants' actions.  But there is no administratively feasible method to determine who lived in the town over that decades-long period, who drank the water, and whether any "hazardous chemicals" in that water came from Defendants or someone else.

*Second*, Plaintiffs' class definitions are impermissibly "fail-safe."  People are class members only if Defendants are liable to them, and those who have no valid claims are defined out of the classes.  Courts routinely refuse to certify classes whose definitions incorporate disputed merits issues, as that approach unfairly offers plaintiffs a free shot on goal:  successful plaintiffs get to recover, but unsuccessful plaintiffs are out of the class and free to try again.  *See*, *e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

*Third*, Plaintiffs haven't remotely satisfied their obligation to show that common questions predominate over individual ones, as Rule 23(b)(3) requires.  It would be difficult to figure out whether even *one* person suffered injury due to exposure to PFAS and whether Defendants' alleged

negligence caused that injury; making the same determination for thousands of people would be impossible without person-by-person adjudication. Similarly, that there are PFAS in Blades does not mean every home in the area went down in value, much less in a systematic way that could be determined in a class proceeding. Plaintiffs also cannot show that PFAS in the water can be traced to any Defendant, especially because there are several alternative sources of PFAS, and Plaintiffs offer no way to rule them out for any putative class member, much less all of them. Eliminating individualized inquiries regarding exposure, injury, and causation would trample on Defendants' right to litigate defenses to individual claims, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366–67 (2011), and would risk awarding damages to class members who have suffered no injury and lack Article III standing, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

*Fourth*, Plaintiffs haven't satisfied the superiority requirement of Rule 23(b)(3). When a class trial can't be anything other than an unmanageable mess, and when plaintiffs are suing for personal injuries and property damage that are significant enough to be the subject of individual lawsuits, a class action isn't the right way to resolve the claims.

*Fifth*, Plaintiffs aren't typical of the classes they hope to represent. The personal-injury plaintiff, Candy Caporale, claims already to have suffered injuries from PFAS exposure, but most would-be class members would claim only to have been exposed. The Third Circuit has held that classes including both exposure-only and already-injured class members are uncertifiable. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 618 (3d Cir. 1996). And the property-damage plaintiffs are also atypical. Property-damage plaintiff Bruce Davis, for example, is subject to the defense of assumption of the risk because he refused to install a free water filter.

Finally, Plaintiffs can't avoid all these problems by urging the Court to certify an "issues" class under Rule 23(c)(4). Such a class would present all the same individualized issues—who

was exposed to PFAS, whether the PFAS caused any injury, whether the PFAS came from a Defendant, and more.  The Court should deny Plaintiffs' motion for class certification.

## BACKGROUND

This is a negligence action in which Plaintiffs claim that Defendants contaminated the groundwater in Blades, Delaware, and undefined surrounding areas, causing them personal injuries and property damage.  Plaintiffs allege that two plating businesses in Blades used certain types of PFAS—PFOA (Perfluorooctanoic Acid) and PFOS (Perfluorooctane Sulfonate)—and that these chemicals contaminated sources of drinking water.  D.I. 356 at 1–2.  One business, Procino Enterprises, is a Defendant in this action; the other, Peninsula Plating, is no longer operating, and Defendant Blades Development LLC is the *bona fide* prospective purchaser of the property where Peninsula used to operate, as defined in the Comprehensive Environmental Response, Compensation, and Liability Act.  D.I. 160 ¶¶ 18–19, 164.  Plaintiffs also allege that Defendants 3M, E.I. du Pont de Nemours and Company (EIDP), Atotech USA, LLC, and MacDermid, Inc. manufactured, marketed, and sold PFAS, *id.* ¶¶ 38–49, without disclosing the potential harms associated with these chemicals, *id.* ¶¶ 300, 307.

Plaintiffs claim PFAS have entered their properties, either through the Blades municipal water system or private wells, and have diminished their property values due to a stigma associated with contamination.  D.I. 356 at 6–9.  They also allege that residents in and around Blades have suffered undefined personal injuries and an increased risk of disease due to exposure to PFOA and PFOS.  *Id.*  Plaintiffs seek certification of two classes:  (1) a "Personal Injury, Liability Issues Only Class" of people who resided in Blades "from 1985 to present[] and consumed water from the Town's public water system" and people who "resided in or near" Blades "from 1985 to present" and "consumed water from private wells," who "as a result were exposed to hazardous chemicals

due to Defendants' actions," and (2) a "Property Damage Class" of people "who currently own properties in or near" Blades, receive water from Blades's public water system or private water wells, and have diminished property values "due to Defendants' actions." D.I. 356 at 7.

One plaintiff, Candy Caporale, aims to represent the personal-injury class, and three others, Bruce Davis, Gene Sullenberger, and Christine Wootten, hope to represent the property-damage class. D.I. 356 at 17–19. Caporale resides in Blades, receives her water from the public water system, and alleges she is suffering from "multiple conditions," including "high blood pressure," "thyroid . . . cancer," "kidney disease, and ulcerative colitis." *Id.* at 17. Davis, Sullenberger, and Wootten reside in a neighboring town (Seaford, Delaware), receive their water from private wells, and allege their property values have "been diminished by the stigma associated with the contamination of their water supply." *Id.* at 18.

Plaintiffs ask this Court to handle the personal-injury claims and property-damage claims separately. D.I. 356 at 6. They propose a complex series of proceedings, starting with a determination of liability for all personal-injury claims, followed by individual determinations of each plaintiff's personal-injury damages. *Id.* Then they ask the Court to apply its rulings on personal-injury liability to the property-damage class and hold *another* class trial to determine, on a classwide basis, the amount of property damages sustained. *Id.* In the alternative, Plaintiffs request an issues-only class for liability as to personal injury and property damage. *Id.* at 23–25.

On January 29, 2025, Magistrate Judge Fallon recommended granting motions for summary judgment brought by EIDP, MacDermid, and 3M. D.I. 412. Judge Fallon concluded that Plaintiffs have not identified evidence establishing a nexus between PFAS-containing products from those Defendants and the facilities at Procino or Peninsula. *Id.* at 6, 9, 10.

## LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 564 U.S. at 348. "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). Courts must undertake a "rigorous analysis" to ensure that the party seeking certification has met its burden to prove each requirement by a preponderance of the evidence. *Dukes*, 564 U.S. at 350–51. A plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350.

## ARGUMENT

### I.    Plaintiffs Have Not Shown That the Classes Are Ascertainable

Plaintiffs "must show by a preponderance of the evidence that the class is ascertainable." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013). For a class to be ascertainable, "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 355. "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593.

The Third Circuit regularly vacates class-certification orders where the plaintiffs offer no way to determine who is in the proposed class. In *Marcus*, the Third Circuit cautioned against relying solely on "potential class members' say so" to determine who was in a class of BMW drivers whose run-flat tires had been replaced, especially given that neither BMW nor its dealerships had records to establish whose tires "ha[d] gone flat and been replaced." *Id.* at 594.

In *Hayes*, the Third Circuit vacated certification of a class of people who bought a service plan to cover products sold "as-is" from Sam's Club. 725 F.3d at 352–53. The plaintiffs had no method to determine which transactions were for as-is items or whether a buyer bought the service plan. *Id.* at 355–56. The court directed that the class should not be recertified on remand "if ascertaining the class requires extensive and individualized fact-finding." *Id.* at 356. In *Carrera v. Bayer Corp.*, the Third Circuit vacated certification of a class of buyers of a diet supplement, noting the absence of evidence that the retailers had purchaser records. 727 F.3d 300, 304, 308–09 (3d Cir. 2013). The court rejected the plaintiff's suggestion of using affidavits to corroborate purchases because defendants have a "due process right to challenge the proof used to demonstrate class membership," and the plaintiff couldn't prove the affidavits would be reliable. *Id.* at 307, 309–11.

This case presents the same problem: There is no way to determine who belongs in each of Plaintiffs' proposed classes, partly because of the imprecision of the class definitions. Plaintiffs define both classes to include people who lived not just in Blades, but also "near" Blades. But Plaintiffs don't define how "near" is near enough to be included in the classes. Plaintiffs' class definitions also refer to "Exhibit 1," which purportedly "shows the proposed class boundary," D.I. 356 at 7, 11, but that exhibit is a 2,343-page "Final Site Inspection Report" prepared for the EPA, D.I. 356-1–356-6. It does not show a proposed class boundary or help in any way to discern which people and places Plaintiffs meant to include in their class definitions. Plaintiffs' failure to provide a class boundary alone makes their classes impossible to ascertain.

**Personal-Injury Class.** Even if Plaintiffs had offered an actual proposed class boundary, it would still be impossible to determine who meets the rest of the requirements for class membership. To qualify for membership, a person needs to have (1) "resided in the Town of Blades . . . and consumed water from the Town's public water system" or "resided in or near the

Town . . . and consumed water from private wells," and (2) been "exposed to hazardous chemicals" (3) "due to Defendants' actions." D.I. 356 at 7. Plaintiffs offer no way of figuring out who does or doesn't fill that bingo card. Plaintiffs suggest, in passing, that "the billing records for the public water system of the Town of Blades, and census and other records, readily establish the identity" of the class members. *Id.* at 11. But "[a] plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Carrera*, 727 F.3d at 306. Without a mini-trial for every proposed class member, it would be impossible to determine who satisfies any of the conditions for class membership, much less all of them.

*First*, Plaintiffs provide no mechanism for determining who has lived in the proposed class area—whatever it might be—from 1985 to the present. Plaintiffs gesture at "census and other records," but never explain how any such records would identify the people who lived in or "near" Blades. The Census Bureau conducts a census only once every decade, and although its records for Blades tell us that 1,179 people lived there as of 2020, those records don't tell us *who* they are or *where* they lived. *Blades, Del.*, U.S. CENSUS BUR., https://tinyurl.com/38dx6z63.

*Second*, Plaintiffs offer no way to determine which residents "consumed water from the Town's public water system" or "from private wells." They say they will look to "billing records for the public water system," D.I. 356 at 11, but don't explain whether billing records in fact go back to 1985 or how those records could reveal who actually drank the water. Some residents may have preferred bottled water or other beverages to unfiltered tap water. And Plaintiffs say nothing about how they could prove who drank water from private wells. The only way to do that would be to impermissibly rely on "potential class members' 'say so.'" *Marcus*, 687 F.3d at 594.

*Third*, Plaintiffs never say how they'll prove who was exposed to "hazardous chemicals." In fact, they don't even define what the "hazardous chemicals" are. They discuss both PFOS and

PFOA in their motion, but their proposed personal-injury class definition includes people exposed to any "hazardous chemical" under the sun. D.I. 356 at 11. Moreover, Plaintiffs identify zero evidence that they or any putative class members were actually exposed to PFOS, PFOA, or any other chemical. Even in a case based on exposure to a single hazardous chemical, a district court denied class certification on ascertainability and predominance grounds because "[t]he only way" to determine who was in the proposed class would have been "individual fact-finding or trials that measure[d] the level of contamination that someone was exposed to or that someone's property contained." *Lafferty v. Sherwin-Williams Co.*, 2018 WL 3993448, at *6 (D.N.J. Aug. 21, 2018).

*Fourth*, Plaintiffs do not explain how they will show that any chemical exposure was "due to Defendants' actions." D.I. 356 at 7. The source of the contaminants found is contested, and Plaintiffs' expert's conclusion that PFAS in the groundwater in Blades came from the Peninsula and Procino sites is completely unsupported by any evidence or analysis and does not exclude other potential sources of the PFAS. D.I. 356-19 ¶ 11; *see also* Ex. S at 18–19; Ex. O at 21, 34.[1] Plaintiffs "may offer one potential source of those contaminants, but many other explanations may exist that are specific to a particular property." *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 233 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011). In fact, Plaintiffs' expert, Dr. Richard Laton, admitted that some of the contamination in the Blades area more than likely came from sources other than Peninsula and Procino. Ex. C at 82:10–84:24; 237:9–238:23. Thus, to identify class members, Plaintiffs would have to prove—and Defendants would have the right to contest—that any contamination in their water came from the Peninsula or the Procino sites.

Given these four insurmountable hurdles, the personal-injury class is not ascertainable.

**Property-Damage Class.** The proposed property-damage class consists of those (1) who

---

[1] All exhibit cites are to the exhibits submitted with the accompanying Smith Declaration.

"currently own properties in or near the Town of Blades, Delaware, whose water is supplied by the Town's public water system, or who own properties with private drinking water wells," and (2) "whose property values have been diminished due to Defendants' actions."  D.I. 356 at 7. Plaintiffs have no feasible way of identifying people who meet both of those criteria, either.

Plaintiffs suggest that "property records authoritatively establish the current owners of the residences falling within the boundary area."  D.I. 356 at 11.  But Plaintiffs do not define the "boundary area," in their class definition or otherwise, nor do they identify the "property records" that they reference.  They also fail to explain how they would identify which putative class members' "property values have been diminished due to Defendants' actions."  The questions whether any diminution in value occurred, and whether it was caused by any Defendant, are highly individualized.  In *Benefield v. International Paper Co.*, the court held that a proposed property-damage class was not ascertainable when the plaintiffs' expert merely offered a mass-appraisal formula that would not "indicate which properties ha[d] suffered a diminution in value." 270 F.R.D. 640, 644–45 (M.D. Ala. 2010).  Because determining which property owners met the requirement would "require additional evidence[] and factual findings by the court before class members could be identified," the class was not ascertainable.  *Id.*  Here, the problems are even more acute because Plaintiffs' expert, Dr. Kevin Boyle, doesn't say that any property has been devalued, let alone because of Defendants' actions.  Ex. D at 24:19–24.  Instead, he offers the general conclusion that properties near "sites that have emitted hazardous substances . . . are more likely than not to experience diminished values."  D.I. 356-22 at 12.  This opinion does nothing to help the Court ascertain which properties' values have declined.

In sum, the Court would have to conduct endless mini-trials just to identify the class members in this case, which is reason enough to deny Plaintiffs' motion.

## II.    Plaintiffs' Proposed Class Definitions Are Impermissibly Fail-Safe

A fail-safe class is "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner*, 669 F.3d at 825.  Fail-safe class definitions result in "a 'heads I win, tails you lose' situation—'a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'"  *Butela v. Midland Credit Mgmt. Inc.*, 341 F.R.D. 581, 603 (W.D. Pa. 2022).  "Such a result is prohibited in large part because it would fail to provide the final resolution of the claims of all class members that is envisioned in class action litigation."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).

Plaintiffs' proposed class definitions are fail-safe because class membership turns on the causation, exposure, and injury elements of their negligence claim—all of which are disputed and highly individualized merits issues.  The personal-injury class contains those who have been "exposed to hazardous chemicals due to Defendants' actions," and the property-damage class contains those whose "property values have been diminished due to Defendants' actions."  D.I. 356 at 7.  If a would-be class member was injured by someone other than Defendants, was not exposed to PFAS contamination, or did not suffer any diminution in property value, he's simply out of the class (and free to bring a separate suit or be a class member in another action).  This entanglement of class definition and merits "is an independent ground for denying class certification." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

In addition, fail-safe classes generally "fail[] to satisfy the ascertainability requirement," *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 625 (E.D. Pa. 2015), because "the inquiry into class membership would require holding countless hearings resembling 'mini-trials'" as to merits issues, *Butela*, 341 F.R.D. at 603.  For example, a class of commercial fisherman whose property was allegedly contaminated by oil discharged "due to the negligence of

defendants" was not ascertainable because the plaintiffs had no "evidence showing that a particular" defendant impacted a particular plaintiff, and class membership could not "be determined without inquiring into the merits of each person's claim." *Barasich v. Shell Pipeline Co., LP*, 2008 WL 6468611, at *4 (E.D. La. June 19, 2008); *accord, e.g.*, *Haggart v. Endogastric Sols., Inc.*, 2012 WL 2513494, at *3 (W.D. Pa. June 28, 2012).

This case is no different. Plaintiffs' class definitions would require this Court to conduct mini-trials as to the causation, exposure, and injury elements of their negligence claim—whether each resident who consumed water from the Blades public water system or a private well was exposed to hazardous chemicals, which hazardous chemicals the resident was exposed to, whether the exposure was due to Defendants' actions, and whether the value of each property owner's property was diminished due to Defendants' actions—to determine who is in the classes.

In short, Plaintiffs' proposed classes impermissibly link class membership to the merits of their highly individualized claims, which is yet another threshold reason to deny certification.

## III.    Plaintiffs Have Not Met Their Burden to Prove Common Issues Will Predominate Over Individualized Issues

Plaintiffs bear the burden of demonstrating that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Third Circuit has stated that mass-tort cases like this one are rarely appropriate for class treatment because "no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 628 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* Fed. R. Civ. P. 23 advisory committee note to 1966 amendment (mass accidents "ordinarily not appropriate for a class action" because questions affecting "liability and defenses of liability" would affect those

harmed "in different ways"). This case is a textbook example of these problems. To prove their negligence claim, Plaintiffs will have to prove that (A) each putative class member or his or her property was exposed to PFAS, (B) each putative class member suffered injury caused by PFAS, and (C) Defendants' conduct was the cause of those injuries. *See In re TMI*, 67 F.3d 1103, 1119 (3d Cir. 1995). Because there's no way to resolve these questions of exposure, injury, and causation on a classwide basis, the Court shouldn't certify the classes.

### A. Whether Each Resident or Property Was Exposed to PFAS Is an Individualized Issue

For both classes, plaintiffs will need to prove exposure to PFAS to prevail on their claims. *See TMI*, 67 F.3d at 1119. Plaintiffs acknowledge that proof of exposure is necessary to establish Article III standing in toxic-tort cases. D.I. 356 at 9. But they never explain how they can satisfy this element on a classwide basis. Rather, they ask the Court to "credit[] the allegations in the complaint" and allude to unspecified "scientific testing" to support their assertion that every putative class member "was exposed to water flowing to their households that was contaminated with PFOS and PFOA." *Id.* But allegations aren't sufficient; Plaintiffs need classwide "evidentiary proof" of exposure. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (Rule 23 "does not set forth a mere pleading standard."). They have not done that for either proposed class.

**Personal-Injury Class.** Plaintiffs claim that residents living in and near Blades who drank municipal or private well water were exposed to PFAS. But Plaintiffs can't prove on a classwide basis that contaminated water was even *delivered* to residents. And even if they could, there would be no way to prove on a classwide basis how much (if any) tap water each person drank.

"Th[e] 'exposure' element requires that plaintiffs demonstrate they have been exposed 'to a greater extent than anyone else,' i.e., that their 'exposure level exceeds the normal background level.'" *TMI*, 67 F.3d at 1119. Thus, Plaintiffs "must demonstrate that they can use common

evidence to demonstrate that each individual was exposed to a level above background levels," *Gates*, 265 F.R.D. at 224, which courts frequently find is impossible to do on a classwide basis.

In *Gates*, the court denied certification of personal-injury and property-damage classes of village residents alleging groundwater and air contamination because, rather than showing the actual levels of contaminants class members were exposed to, the plaintiffs relied on an estimated "average" exposure rate. 265 F.R.D. at 221. The plaintiffs' expert admitted actual exposure rates "would vary from year to year—though he did not attempt to calculate these variations—such that a putative class member's exposure would depend on the particular year or years" the person lived in the village. *Id.* at 223. The court also noted that various factors "could result in significant differences in exposure," including "the time that each individual spent away from the [v]illage at work, away at school, [or] on extended vacations." *Id.* at 223–24; *see also Rowe v. E.I. DuPont de Nemours & Co.*, 2008 WL 5412912, at *13, 17 (D.N.J. Dec. 23, 2008) (denying certification of medical-monitoring class in PFOA case where plaintiffs could not show "common significant exposure among the class" and plaintiffs' expert made the "undoubtedly false" assumption that each class member weighed the same and drank the same amount of tap water); *Rhodes v. E.I. du Pont de Nemours & Co.*, 253 F.R.D. 365, 374–76 (S.D. W. Va. 2008) (also denying certification of a medical-monitoring class in a PFOA case where exposure could not be shown on a classwide basis, and rejecting plaintiffs' expert's testimony that "exposure can be assessed class-wide by comparing the level of [PFOA] in the [c]lass' water supply with a 'safe' level" set by the EPA).

Plaintiffs here have done even less than the plaintiffs in those cases. They don't offer an average exposure level, an estimated safe level based on class members' average weight and water-consumption habits, or blood tests to demonstrate that anyone, much less everyone, has elevated levels of PFAS. Nor could they: as an expert in *Rowe* admitted, "it would be a very detailed,

13

intensive and huge undertaking to try to go out and assess what everybody's water use was, what their real exposure to water use was." 2008 WL 5412912, at *14. But as that court held, "the difficulty of this task does not excuse Plaintiffs from doing it," as a "class action is not intended to be an easy way around research problems." *Id.*

The difficulty of proving classwide exposure is compounded here because a carbon filter was installed on the municipal water system in February 2018, and the filtered water after that point contained no detectable amounts of PFAS. *See* D.I. 356-1 at 21. So Plaintiffs would have to prove not only that they drank tap water in large quantities, but that they did so *before* February 2018. *See* Ex. Q at 24 ("exposure and risks" of residents who used municipal water "can still vary across properties and individuals within those properties because of differences in factors such as ingestion rates and time spent away from home"). It would be impossible to show this because most people can't remember how much tap water they drank *last week*, let alone over seven years ago. And for residents with private wells, Plaintiffs' own evidence makes clear that PFAS aren't everywhere—and that it would be impossible to determine on a classwide basis which private wells contain PFAS. The EPA sampled 54 private wells outside of Blades in 2018; only seven contained PFAS concentrations exceeding the EPA's health advisory levels of 70 ng/L. D.I. 356-1 at 21; *see also* Ex. Q at 20 (identifying variability in PFAS contamination in private wells within the proposed class area). Dr. Laton also admitted that contamination is a local phenomenon, with some wells having high levels of PFAS, others having trace amounts, and still others none at all. D.I. 356-19 at 53–54. Plaintiffs have proposed no classwide method of determining whether, when, and to what extent PFAS have been present at any of the private wells.

What's more, the mere presence of PFAS in a well doesn't mean that every resident whose water was supplied by that well actually consumed PFAS. The record demonstrates that many

likely filtered it out.  Some residents with private wells likely used adequate filtration even before PFAS were discovered in the area in February 2018, and DNREC promptly provided drinking-water filters to residents whose wells reflected PFAS levels of at least 75% of the EPA's health advisory levels.  D.I. 356-1 at 22.  But some residents with private wells, like Davis, rejected the offer and did not allow DNREC to install the filter.  Ex. I at 13; Ex. E at 98:14–99:18.  And others may have installed their own water filters in February 2018 or thereafter.  Plaintiffs' expert, Dr. Ducatman, testified that there is "tremendous variation among individuals" in levels of exposure because of factors including the use of filters, amount of water consumption, whether tap water is consumed, and the consumption of water at sources outside the home.  Ex. F at 57:2–60:1. Whether residents took mitigating steps will affect each resident's level of exposure, which is not susceptible to classwide proof.  *See Reilly v. Gould, Inc.*, 965 F. Supp. 588, 604–05 (M.D. Pa. 1997) (declining to certify a lead-exposure class where lead had been removed from some residences, so the "impact" of contamination had to "be analyzed property by property and individual by individual").

As in *Rowe*, Plaintiffs here "superficially identified a group of individuals who have potentially suffered 'significant exposure'" instead of "meaningfully identifying a group of individuals who have actually suffered 'significant exposure.'"  2008 WL 5412912, at *16.  There is simply no way to assess whether all the people who have lived in and near Blades over the last four decades drank the water, how much they drank, and the amount of PFAS, if any, in that water.

**Property-Damage Class.**  Plaintiffs' proposed property-damage class turns on the claim that the value of properties was reduced due to PFAS contamination.  Specifically, Plaintiffs contend that "all properties in the current case were exposed to and contaminated by PFAS" and that "[e]very home connected to the municipal water supply was exposed when the PFAS

contaminated the water, and all properties with private wells were confirmed to be contaminated by an EPA-administered water test." D.I. 356 at 22. The only support Plaintiffs offer for these assertions is a set of maps crafted by their expert, Dr. Laton, showing the highest levels of PFAS ever collected from untreated water from a sampling of wells in and around Blades between 2018 and 2022. D.I. 356-19 at Exs. H, I. But Dr. Laton's maps *disprove* this assertion because they show several private wells where no PFAS was detected. *Id.* Regardless, Plaintiffs and Dr. Laton both ignore that water-filtration devices were installed on Blades municipal water supplies and offered to all residents with contaminated private wells in 2018. D.I. 356-1 at 21–22. Dr. Laton's maps show only the amount of PFAS in *pre-filtered* water, which says nothing about the water that actually made its way into residents' homes.

And even if Plaintiffs had evidence showing PFAS in *some* drinking water, it wouldn't show that there were PFAS in *all* the drinking water. Another court in this Circuit denied certification of a property-damage class seeking damages for PFOA groundwater contamination for exactly this reason. In *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 463 (D.N.J. 2009), the plaintiffs argued that they could prove classwide exposure through evidence of the defendant's "release of [PFOA] into the environment and the subsequent contamination of the [municipal water supply]." The court rejected that approach, holding that "[t]o demonstrate that all proposed class members have suffered an entry of PFOA, Plaintiffs would necessarily have to sample each [municipal water supply] customer's water, which they have not done." *Id.* at 464. So too here. There is no shortcut to proving contamination on a property-by-property basis.

There are similar problems with Plaintiffs' evidence about supposed PFAS contamination in the private wells. Only seven of the 54 wells the EPA sampled in 2018 contained PFAS in concentrations exceeding the EPA's health advisory levels. D.I. 356-1 at 21. And Dr. Laton's

maps show varying degrees of PFAS contamination, including wells where no PFAS were detected.  D.I. 356-19 at Exs. H, I.  Those wells disprove Plaintiffs' argument that "all properties" were contaminated, and together they defeat any chance of proving contamination with common evidence.  *See Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 307 (S.D. Ala. 2006) (denying certification because "not every parcel in the Proposed Class Area [wa]s contaminated").

### B.    Whether Each Class Member Has Suffered Injury Is an Individualized Issue

To prevail on their negligence claim, Plaintiffs must prove that they have suffered injury due to the alleged contamination.  *TMI*, 67 F.3d at 1119.  "Every class member must have Article III standing in order to recover individual damages."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  As for personal injury, sometimes it takes a small army of doctors to determine whether *one* person has an ailment and what might have caused it; it would be downright impossible for this Court or a jury to do so for hundreds of people at once.  And for property damage, too—the value of a house depends on a laundry list of factors, including insurability, location, and the timing and quality of renovations.  Possible water contamination may affect value, too, but may not be significant to many buyers—especially if it can be solved with filtration.

**Personal-Injury Class.**  Plaintiffs claim they don't have to identify any injury resulting from PFAS and that *exposure* is sufficient to support their claim.  D.I. 356 at 9.  That's wrong.

*First*, Delaware law makes clear that exposure alone—without a resulting physical injury—isn't enough to state a negligence claim.  *Baker v. Croda Inc.*, 2021 WL 7209363, at *1– 2 (D. Del. Nov. 23, 2021); *see also United States v. Anderson*, 669 A.2d 73, 77 (Del. 1995) ("The requirement of a preceding physical injury prohibits plaintiffs from claiming that exposure to toxic substances . . . has created an increased risk of harm not yet manifested in a physical disease.").  As Judge Hall noted in her report and recommendation on Defendants' motion to dismiss, "[a] tort

claim requires an injury," and "[i]n Delaware, an increased risk of illness (without a present physical injury), is not a sufficient injury."  D.I. 135 at 17.  Plaintiffs must show they can prove through classwide evidence that personal-injury class members suffer from a medical condition *caused by* PFAS exposure, not just that class members were exposed to PFAS at some point.

*Second*, Plaintiffs cannot establish Article III standing without identifying an injury resulting from PFAS.  The Supreme Court held in *TransUnion* that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm."  594 U.S. at 436.  "In cases involving the risk of contracting disease, courts recognize that the speculative risk of future harm—without more—does not meet the 'imminence' requirement of an injury in fact."  *Williams v. Pa. Dept. of Corrs.*, 2022 WL 1295796, at *7 (W.D. Pa. April 5, 2022), *report and recommendation adopted*, 2022 WL 1488426 (W.D. Pa. May 11, 2022).  Plaintiffs do not define the putative class as requiring any specific injury from PFAS exposure beyond a risk of future illness, which is insufficient to establish Article III standing.  And assessing whether putative class members have suffered an actual illness is inherently individualized.

Personal-injury classes based on exposure to contamination are notoriously poor candidates for certification because "individual questions involving causation and damages predominate over (and are more complex than) common issues such as whether defendants released the offending chemical into the environment."  *Gates*, 655 F.3d at 270.  For example, predominance is not met where people "have been exposed to different amounts of PFOA, for different amounts of time, in different ways, and over different periods."  *Rowe*, 2008 WL 5412912, at *21; *see also Georgine*, 83 F.3d at 627.  Here, Plaintiffs' own experts acknowledge that potential class members may have been exposed to varying amounts of PFAS, for different

amounts of time, in different ways, and over different periods.  Ex. F at 57:2–60:1; Ex. C at 140:23–141:11, 195:15–18.  And Plaintiffs have not proposed any classwide method to prove that residents are suffering from some illness caused by their exposure to PFAS contamination in their drinking water—because there is no such method.

Plaintiffs' experts opine that various illnesses "have been associated with exposure to PFOA and/or PFOS," D.I. 356-15 at 2, and that such exposure "causes an increased risk of" various illnesses including cancer, high cholesterol, liver toxicity, and osteoporosis, D.I. 356-16 at 2–3.  But neither of Plaintiffs' experts addresses whether the PFAS levels present in the Blades water supply or that residents actually drank were high enough to increase their risk of any illness.  And even if a resident were suffering from some illness that could be caused by PFAS exposure, "each class member would still have to demonstrate his/her specific exposure, how that exposure has increased his/her risk of disease, and his/her corresponding need for medical [care], all of which would require medical expert testimony specific to each individual." *Rowe*, 2008 WL 5412912, at *21.  Moreover, Dr. Ducatman testified that other contaminants found in the groundwater sampling results in Blades could cause an increased risk of the same illnesses that he tied to PFAS in his affidavit.  Ex. F at 44:4–52:25; *see also* Ex. Q at 24-25.

Aside from other contaminants, there are endless alternative risk factors that could cause the illnesses that Plaintiffs attribute to PFAS.  *See Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 490 (E.D. Pa. 1997) ("the review of each individual's medical and family history and exposure to other risk factors . . . is an obviously individual inquiry").  Determining whether someone suffers from an illness because of PFAS exposure would require numerous inquiries into his or her medical history, family history, work history, lifestyle choices, medications, and more.  For example, Candy Caporale, the proposed personal-injury class representative, alleges she suffers from

multiple conditions, including high blood pressure, thyroid cancer, kidney disease, and ulcerative colitis. D.I. 356 at 17; Ex. G at 12. But she admits that she does not know the extent of her PFAS exposure from her drinking water, she has never tested her blood for PFAS, and no doctor has ever told her that any of these afflictions were caused by PFAS. *Id.* Even assuming PFAS could cause any of these illnesses in the abstract, experts would have to opine on whether each plaintiff's illnesses was actually caused by PFAS exposure. And if this class were certified, those inquiries would be repeated as many times as there are class members.

**Property-Damage Class.** Plaintiffs claim contamination around Blades has "diminished the market value of their residential properties." D.I. 356 at 9. They plan to prove that injury with the affidavit of their damages expert, Dr. Kevin Boyle. Plaintiffs say Dr. Boyle "opined that all current owners of these properties have suffered a diminution of value as a result of the pollution stigma." *Id.* But Dr. Boyle doesn't say that in his affidavit. D.I. 356-22. In fact, he doesn't even say a *single* property's value has decreased as a result of any supposed stigma, let alone "all" properties. Ex. D at 21:8–22:4 (testifying that he has "not reviewed anything on property values"). His "opinion" is all of four sentences, amounting to the threadbare conclusion that "[t]he evidence from sites that have emitted hazardous substances is that properties near the sites are more likely than not to experience diminished values." D.I. 356-22 at 12. This generic statement about unnamed "sites" is not sufficient evidence to prove diminution in value for every one of the hundreds of properties at issue. As other courts have recognized, diminution of property value "require[s] plaintiff-by-plaintiff scrutiny," and "whether all members of the class actually suffered an economic injury is a question of liability, not damages." *Gates*, 265 F.R.D. at 233.

As a result, courts frequently hold that diminution in property value simply can't be determined on a classwide basis. For example, in *Nix. v. Chemours Company FC*, 2023 WL

6471690 (E.D.N.C. Oct. 4, 2023), the court declined to certify a PFAS diminution-of-property-value class because the plaintiffs' expert proposed taking only a crude average of supposed losses rather than calculating the loss of value for each property.  *Id.* at *24.  And in *Brown v. Saint-Gobain Performance Plastics*, another PFAS case, the court held that diminution in property value would depend on "individual factors" like "the extent and duration of contamination," "the timing and effectiveness of mitigation efforts," and "whether the property owner purchased or sold a property at an inflated price during the class period."  2023 WL 9023158, at *21 (D.N.H. Dec. 29, 2023); *see also*, *e.g.*, *Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *19 (S.D. Fla. May 2, 2018); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 677 (S.D. Ala. 2005).

These same challenges apply in this case.  As Defendants' experts in real-estate economics explain, the proposed class area consists of residential properties that differ in, among other things, architectural style, features, and locations. Ex. P at 12–23; Ex. R § 1.6.  The alleged contamination also does not impact each property uniformly, which makes it impossible to meaningfully assess diminution in value on a classwide basis.  Ex. P at 23–24.  And any reliable analysis of property diminution in value would have to account for the other environmental issues that might affect property values in the proposed class area.  *Id.* at 25–28; Ex. R § 1.8.  For example, many "hazardous chemicals" other than PFAS are present at Plaintiffs' homes.  *See, e.g.*, Ex. A (testing at Sullenberger and Wootten's home revealed the presence of barium, chromium, cobalt, manganese, and cyanide at concentrations above the MCL); Ex. B (testing at Davis's home revealed cadmium, cobalt, manganese, and cyanide).

Plaintiffs haven't accounted for any of these inherently individualized issues.  They don't address how they might prove that a property located between the Blades Cemetery and a poultry processing facility will experience property devaluation the same way that a property between the

Blades Park and Blades Elementary School will, or that a property with a private well that has never had any detectable level of PFAS will be affected by the same "stigma" damage as a property with a private well that had a PFAS level over the EPA's health advisory levels. In fact, Plaintiffs do not propose a damages model at all. That fact alone precludes certification. *See Comcast Corp.*, 569 U.S. at 34; *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification.").

Plaintiffs assert that Dr. Boyle will use a model to measure the supposed diminution of value on a classwide basis. D.I. 356 at 21. But Dr. Boyle doesn't say that. He says that *other people* have used hedonic property-value models and meta-analyses to explain variation in property sale prices, D.I. 356-22 at 9–11, but not that he could use those models to determine any variation here. Plaintiffs can't satisfy the predominance requirement by suggesting that Dr. Boyle will offer a real model later in the case. *See, e.g., In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 322–26 (3d Cir. 2008); *Ward v. Apple, Inc.*, 784 F. App'x 539, 540–41 (9th Cir. 2019); *see also Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard," so a plaintiff "must be prepared to prove" it has met the class-certification requirements).

Even where damages experts do propose common models for mass appraisal, courts don't blindly accept them. Courts have rejected expert attempts to use averages as a "shortcut" to calculate classwide damages. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343 (4th Cir. 1998) (reversing class certification). "Attempts to meet the burden of proof using modeling and assumptions that do not reflect the individual characteristics of class members [are] met with skepticism." *Gates*, 655 F.3d at 266; *see also In re Asacol Antitrust Litig.*, 907 F.3d 42, 54 (1st Cir. 2018). And a model can't justify class certification if the expert hasn't run it. In *Cotromano*, for example, the plaintiffs' damages expert "ha[d] not yet run his contemplated

individual sales trend data, based on real-world market evidence, even for the class representatives," so there was "no evidence that any home in the proposed class area ha[d] suffered a diminution in property value in this case, much less a class-wide diminution in values." 2018 WL 2047468, at *19. And in *LaBauve*, the court rejected the plaintiffs' damages model because the expert had "not applied [his proposed] methodologies to class members' properties" or "performed any analysis of the diminution in value of the plaintiffs' property." 231 F.R.D. at 676.

The same is true here. Dr. Boyle hasn't proposed (or tested) a model that would account for the various unique factors that go into valuing a property, and he hasn't analyzed whether any properties have actually decreased in value. Plaintiffs cannot sustain their burden to prove economic injury on a classwide basis merely by having an expert offer the unscientific opinion that people don't want to live near contamination.

### C.    Whether Any PFAS Contamination Came from a Defendant or an Alternative Source Is an Individualized Issue

It isn't enough for Plaintiffs to show PFAS contamination generally has caused their alleged injuries. They must show PFAS contamination attributable to specific Defendants—rather than some other source—caused their injuries. The EPA concluded that "no specific source or sources could be found in the vicinity of the plume to which groundwater contamination could reasonably be attributed." Ex. H at 00015–16; *see also* Ex. S at 18–19. The EPA report on contamination in Blades identifies two potential alternative sources for PFAS in groundwater: "Anchor Enterprises, a metal fabrication facility located 0.1 mile north of the public supply wells along High Street, and the Blades Fire Department, located 0.25 mile west of the public supply wells." D.I. 356-1 at 23. Analysis of water sampling data shows differences in the distribution of PFAS compounds, which in turn suggests different sources or different mixtures of sources, which Dr. Laton acknowledges. Ex. O at 24–25; *see also* Ex. S at 19–20. In addition, the low correlation

between PFAS impacts and metals impacts indicates that the Peninsula and Procino facilities are not significant sources of contaminants to all the groundwater in the proposed class area, and that there are likely other sources of PFAS.  Ex. O at 26.  Plaintiffs don't address these potential alternative sources, let alone show how they plan to rule them out without individualized inquiries.  Plaintiffs' expert, Dr. Laton, simply assumes PFAS in the groundwater in Blades came from Peninsula and Procino.  D.I. 356-19 ¶ 11.

Courts deny certification where the source of contamination is in question.  *See*, *e.g.*, *Fisher*, 238 F.R.D. at 307–08 (holding in pesticide-contamination action that "causation w[ould] unquestionably be an individual-specific enterprise" because the "mere presence of [contaminants] at a location says nothing about causation" and "[s]orting among these different potential explanations w[ould] necessarily occur on a property-by-property basis"); *LaBauve*, 231 F.R.D. at 680 ("causation turn[ed] on highly individual-specific determinations" because the contaminant "may be emitted by many sources," "necessitat[ing] an individualized inquiry for each and every plaintiff" as to the presence and source of the contaminant).  The Court should do the same here, given these exact same individualized inquiries will be necessary.

### D.     Whether A Given Property Is Entitled to Stigma Diminution in Value Damages Is an Individualized Issue

Plaintiffs seek diminution-in-value damages in connection with all properties in the class area due to the alleged stigma of PFAS contamination.  But that stigma theory doesn't, and can't, apply across the board.  The default yardstick for damages to property is the cost of repair; diminution of value is an appropriate measure of damages only "if the evidence demonstrates that the cost of restoration is unreasonable or disproportionate to the diminution in the value of the land caused by the loss."  *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 2010 WL 1380252, at *5 (Del. Super. Apr. 8, 2010); *accord Leary v. Oswald*, 2006 WL 3587249, at *3 (Del. Super.

Oct. 25, 2006); *Farny v. Bestfield Builders, Inc.*, 391 A.2d 212, 213–14 (Del. Super. 1978).  As a result, the factfinder would need to determine, for each property, cost of restoration (if any) and diminution in value (if any).  There is no way of assessing on a classwide basis how much it would cost to restore properties and how much property values have fallen, so it would be impossible to know the *type* of damages each would-be class member should recover, let alone how much.

## IV.    Plaintiffs Have Not Shown That a Class Action Is Superior to Individual Actions

Rule 23(b)(3) requires Plaintiffs to show "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Georgine*, 83 F.3d at 632. Plaintiffs have not done that for the same reasons they have not satisfied the predominance requirement:  "Even if the Court were to certify common issues, the subsequent separate proceedings necessary for each plaintiff would undo whatever efficiencies such a class proceeding would have been intended to promote."  *Gates*, 265 F.R.D. at 234; *see also, e.g.*, *Cotromano*, 2018 WL 2047468, at *21 (a class action would be "particularly inappropriate" in action for property-value diminution from groundwater contamination because "Plaintiffs must individually prove causation and damages after establishing liability, and varying kinds and amounts of 'stigma' will attach to any given property, depending on the presence of actual or threatened contamination, varying kinds and amounts of contamination and proximity to it"); *Arch*, 175 F.R.D. at 492–93.

Plaintiffs argue that the superiority requirement is satisfied because individual class members' claims, "though not trivial, are not substantial enough to motivate individual lawsuits." D.I. 356 at 22.  That contention is hard to square with other cases presenting essentially identical claims in individual suits rather than would-be class litigation.  Plaintiffs' counsel, for example, currently represent sixty individual plaintiffs asserting claims in a case in North Carolina federal court based on alleged contamination of a drinking-water supply with PFAS.  *Bartholomew v.*

*Corteva*, No. 23-cv-01592 (E.D.N.C.).    These plaintiffs assert claims for negligence, gross negligence, private nuisance, and trespass to real property, and seek compensatory damages for personal and/or property-based injuries.  *Id.*, D.I. 20 ¶ 1.

Plaintiffs' claims provide sufficient financial incentive for individual plaintiffs to sue on their own.  *See*, *e.g.*, *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (where "some class members . . . arguably would have a significant financial stake to raise stand-alone claims," proposed class failed superiority requirement); *Georgine*, 83 F.3d at 633 ("claims for personal injury . . . have a significant impact on the lives of the plaintiffs" and "frequently receive huge awards in the tort system").  Personal-injury plaintiff Candy Caporale alleges she "suffers from multiple conditions," including thyroid cancer, D.I. 356 at 17, and the property-damage plaintiffs allege the values of their properties were diminished by water contamination and "stigma," *id.* at 15.  These are the kinds of claims that plaintiffs frequently bring on their own—not low-value claims justifying class actions.  *See*, *e.g.*, *Giordano v. Solvay Specialty Polymers USA, LLC*, 522 F. Supp. 3d 26 (D.N.J. 2021) (individual personal-injury action for PFAS contamination); *Higgins v. Huhtamaki, Inc.*, 2023 WL 6516538 (D. Me. Oct. 5, 2023) (individual personal-injury and property-damage action for PFAS contamination).

## V.    Plaintiffs Are Not Typical of the Classes They Seek to Represent

"[T]he claims of the class representative" must "generally [be] the same as those of the class," both in terms of "the legal theory advanced and . . . the factual circumstances underlying that theory."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).  When a named representative's claims "involve individual issues such as injury [and] causation," the representative is atypical, and certification should be denied.  *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 205 (D. Minn. 2003).  Courts also look to "whether the named plaintiffs have incentives that

align with those of absent class members so that the absentees' interests will be fairly represented." *Georgine*, 83 F.3d at 631. And a class representative is atypical—rendering certification "inappropriate"—if he or she "'is subject to a unique defense that is likely to become a major focus of the litigation.'" *Schering*, 589 F.3d at 598.

### A.    Ms. Caporale Is Not Typical of the Proposed Personal-Injury Class

Ms. Caporale is the proposed representative of a "Personal Injury" class. That is a misnomer because the class definition includes people who have not suffered any injury, so long as they have "consumed" contaminated water. D.I. 356 at 7. Ms. Caporale says she is suffering from a variety of ailments that she attributes to exposure to PFAS. *Id.* at 17 (high blood pressure, thyroid cancer, liver disease, kidney disease, and ulcerative colitis).

This putative class resembles one that failed the typicality test in *Georgine v. Amchem Products, Inc.*, an asbestos case. 83 F.3d at 618. That class included people who were allegedly injured by asbestos as well as people who had only been exposed. *Id.* The Third Circuit held that no plaintiff could be typical of the class because the divergence between exposure-only and already-injured plaintiffs "create[d] problematic conflicts of interest": Exposure-only plaintiffs "have an interest in preserving as large a [settlement] fund as possible," while the already-injured plaintiffs would "seek to maximize front-end benefits." *Id.* Here, too, the class definition apparently covers both those merely exposed to PFAS and those allegedly already injured by it. If the Court permits exposure-only class members to pursue claims, then Plaintiffs would fail to satisfy the typicality requirement because, as in *Georgine*, the would-be class members' claims differ so much that no "representative could be deemed typical of the class." *Id.* at 632.

### B.    Mr. Davis, Mr. Sullenberger, and Ms. Wootten Are Not Typical of the Proposed Property-Damage Class

The property-damage plaintiffs fare no better for two reasons. *First*, property-damage

plaintiff Bruce Davis is atypical because Defendants can mount a unique assumption-of-the-risk defense against him. *See Schering*, 589 F.3d at 597–98. Mr. Davis rejected the EPA's offer of a free water filter on his property and would not let an EPA representative remain on his property to investigate the contamination or install the filter. Ex. E at 91:15–93:21, 98:14–99:18; Ex. I at 12–13. He therefore assumed the risk of any harm that he ultimately suffered by declining that remediation. *See*, *e.g.*, *Monk v. V.I. Water & Power Auth.*, 53 F.3d 1381, 1388 (3d Cir. 1995) (plaintiff who was aware of the danger presented by the defendants' product and proceeded anyway "assumed the risk of injury"). The availability of this affirmative defense is fatal to typicality because it could "obviate[]" any "duty owed by the defendant" or require "apportionment of fault under the comparative negligence" regime. *Helm v. 206 Mass. Avenue, LLC*, 107 A.3d 1074, 1078, 1082 (Del. 2014).

*Second*, none of the proposed property-damage class representatives—Mr. Davis, Mr. Sullenberger, or Ms. Wootten—owns property in Blades. They own properties in the neighboring town of Seaford, which is outside of the Blades municipal water boundary. Ex. I at 6–7; Ex. J at 6–7; Ex. K at 6–7; D.I. 356-19 at Ex. E. And all three plaintiffs get their water from private wells. *See* Ex. I at 9; Ex. L at 58:7–18; Ex. M at 70:12–18. A finding that these plaintiffs' properties were contaminated, or that the properties depreciated in value, would tell this Court nothing about the many putative class members who reside within Blades city limits and get their water from the municipal system.

## VI.    The Court Should Not Certify a Liability-Only Issues Class

Finally, Plaintiffs tack onto their motion a cursory and undeveloped request to certify a Rule 23(c)(4) issues-only class. D.I. 356 at 23–25. Issues classes are proper only when plaintiffs can satisfy three requirements: (1) the proposed issues class satisfies the requirements of Rule

23(a), *Russell v. Ed. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 270 (3d Cir. 2021); (2) the issue satisfies one of the subsections of Rule 23(b), *id.*; and (3) the class is "appropriate for class adjudication," *Gates*, 655 F.3d at 272.  Plaintiffs flunk all three requirements.

Because Plaintiffs do not meaningfully distinguish this "issues class" from the other proposed classes, the issues class fails to satisfy the requirements of Rule 23(a) and (b) for the same reasons that the other classes do.  Plaintiffs describe the issues class only as "an issues class on liability," D.I. 356 at 25, without explaining how it differs from the proposed "personal injury class," which is also limited to liability issues—the same ones, in fact, *id.* at 6.  And limiting the class to "liability only" doesn't fix Plaintiffs' substantial predominance problems.  To prove liability on a negligence claim (and to establish Article III standing), Plaintiffs must prove injury and causation.  *See Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010).  Proving either on a classwide basis is impossible, as explained above.

A liability-only class would also flunk the "appropriateness" test for both personal injury and property damage.  *Gates*, 655 F.3d at 272.  To determine whether an issue is "appropriate for class adjudication," courts weigh a variety of factors, including "the type of claim(s) and issue(s) in question," "the overall complexity of the case," "the efficiencies to be gained by granting partial certification," and "the repercussions [that] certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues."  *Id.* at 273.  Courts should certify an issues class only when the issue is severable from the rest of the action and resolving the issue on a classwide basis "will fairly and efficiently advance the resolution of class members' claims."  *Id.*

*Gates* demonstrates that property-damage claims based on alleged contamination are not well suited to be resolved via an issue class.  In *Gates*, the plaintiffs moved to certify a liability-only class of property owners alleging that a chemical company's pollution decreased their

property values.  655 F.3d at 258.  The Third Circuit affirmed the district court's rejection of the liability-only class, holding that the plaintiffs had failed to "define[] the scope of the liability-only trial" or "propose[] common proof."  *Id.* at 274.  The court also noted that classwide treatment of the liability issue "may prejudice absent class members whose properties may be shown to have suffered greater contamination" and that estimates of contamination to all classwide "residents over substantial periods of time" would not tell the court "the level of contamination currently present at each home."  *Id.*  In other words, the question of the amount of contamination at each putative class member's property required individualized analysis and could not be adjudicated on a classwide basis under the banner of "liability."  *Id.*

The same is true here.  Plaintiffs have not shown that the issue of liability could be resolved without addressing the many individualized issues—both for property-damage claims, as in *Gates*, and for personal-injury claims.  For the latter, some class members may have been exposed to PFAS in the workplace, or while living in other places; some may have had limited exposure to PFAS because, for example, they drank bottled water instead of tap water; and so on.  For property-damage claims, properties could have become contaminated in a variety of ways, like the use of household products that contained PFAS or from landfills or incinerators.  Some people and properties might have been injured by contaminants other than PFAS—or may not have any PFAS contamination at all.  Because all these individualized questions must be answered before any Defendant can be held liable, a class trial limited to liability would remain an impossibility.

## CONCLUSION

The Court should deny Plaintiffs' motion for class certification.

Lauren Goldman, *Pro Hac Vice*
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Tel. (212) 351-4000
lgoldman@gibsondunn.com

Amir C. Tayrani, *Pro Hac Vice*
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Tel. (202) 955-8500
atayrani@gibsondunn.com

Bradley J. Hamburger, *Pro Hac Vice*
Daniel R. Adler, *Pro Hac Vice*
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel. (213) 229-7000
bhamburger@gibsondunn.com
dadler@gibsondunn.com

/s/ Kelly E. Farnan
Kelly E. Farnan (DE # 4395)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Tel. (302) 651-7700
farnan@rlf.com

Christopher Essig, *Pro Hac Vice*
Reid Smith, *Pro Hac Vice*
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Tel. (312) 558-5600
cessig@winston.com
rfsmith@winston.com

*Counsel for Defendant 3M Company*

/s/ Catherine A. Gaul
Catherine A. Gaul (DE # 4310)
Andrew Colin Mayo (DE # 5207)
Randall J. Teti (DE # 6334)
**ASHBY & GEDDES, P.A.**
500 Delaware Avenue – Floor 8
Wilmington, DE 19801
Tel. (302) 654-1888
cgaul@ashbygeddes.com
amayo@ashbygeddes.com
rteti@ashbygeddes.com

Thomas R. Waskom, *Pro Hac Vice*
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Tel. (213) 532-2176
twaskom@Hunton.com

Michael J. Bisceglia, *Pro Hac Vice*
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, VA 23219
Tel. (804) 788-8200
mbisceglia@Hunton.com

*Counsel for Defendant Atotech USA, LLC*

/s/ Brian D. Tome
Brian D. Tome (DE # 5300)
**REILLY, McDEVITT & HENRICH, P.C.**
1013 Centre Road – Suite 210
Wilmington, DE 19805
Tel. (302) 777-1700
btome@rmh-law.com

*Counsel for Defendant Blades Development LLC*

/s/ Daniel M. Silver
Daniel M. Silver (DE # 4758)
**McCARTER & ENGLISH, LLP**
Renaissance Centre
405 North King Street – Floor 8
Wilmington, DE 19801
Tel. (302) 984-6300
dsilver@mccarter.com

Andy Carpenter, *Pro Hac Vice*
Brent Dwerlkotte, *Pro Hac Vice*
**SHOOK HARDY AND BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
acarpenter@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendant EIDP, Inc.*

/s/
Gerry Gray (DE # 2742)
**DOROSHOW, PASQUALE, KRAWITZ & BHAYA**
14 Village Square
Smyrna, DE 19977
Tel. (302) 508-2140
GerryGray@dplaw.com

*Counsel for Defendant Procino Plating, Inc.*

/s/ Kaan Ekiner
Kaan Ekiner (DE # 5607)
**COZEN O'CONNOR**
1201 North Market Street
Suite 1001 Wilmington, DE 19801
Tel. (302) 295-2035
kekiner@cozen.com

Michael de Leeuw, *Pro Hac Vice*
Matthew L. Elkin, *Pro Hac Vice*
Maria Ermakova, *Pro Hac Vice*
**COZEN O'CONNOR**
3 WTC, 175 Greenwich Str., 55th Floor
New York, NY 10007
mdeleew@cozen.com
melkin@cozen.com
mermakova@cozen.com
*Counsel for Defendant MacDermid, Inc.*

Dated:  March 7, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2025, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**<u>BY ELECTRONIC MAIL</u>**
David T. Crumplar
Thomas C. Crumplar
Jacobs & Crumplar, P.A.
10 Corporate Circle, Suite 301
New Castle, DE 19720

**<u>BY ELECTRONIC MAIL</u>**
Paul J. Napoli
Coral M. Odiot Rivera
Verónica N. Vázquez Santiago
Gabriel M. Vazquez
NS PR Law Services LLC
1302 Avenida Ponce de León
San Juan PR 00907-3982

**<u>BY ELECTRONIC MAIL</u>**
Patrick N. Haines
Napoli Shkolnik PLLC
3001 Esperanza Crossing, #1063
Austin TX 78758-3692

**<u>BY ELECTRONIC MAIL</u>**
Andrew William Croner
Napoli Shkolnik PLLC
400 Broadhollow Road
Suite 305
Melville NY 11747

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)