## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CANDY CAPORALE, BRUCE DAVIS, GENE SULLENBERGER, and CHRISTINE WOOTTEN, for themselves and on behalf of all others similarly situated, ) )  ) )  ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 19-1672-JLH-SRF |
| ) | |
| EIDP, INC., THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.), ATOTECH USA, LLC, MACDERMID, INC., PROCINO PLATING, INC., a/k/a PROCINO ENTERPRISES, a/k/a PROCINO, and BLADES DEVELOPMENT LLC, ) )  ) )  ) )  ) )  ) ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Presently before the court in this putative class action are the following motions:

(1) the motion to exclude the testimony of Dr. Richard Laton, filed by defendants 3M Company

("3M"); EIDP, Inc. ("EIDP"); Atotech USA, LLC ("Atotech"); MacDermid, Inc.

("MacDermid"); Procino Plating, Inc. ("Procino"); and Blades Development LLC ("Blades

Development"),[1] (D.I. 437);[2] (2) the motion for class certification under Federal Rule of Civil

Procedure 23, filed by plaintiffs Candy Caporale, Bruce Davis, Gene Sullenberger, Christine

---

[1] Since the pending motion to exclude was filed, defendants 3M, EIDP, and MacDermid have been terminated from this action. (D.I. 412; D.I. 451)  As used herein, the term "Defendants" refers to remaining defendants Atotech, Procino, and Blades Development.

[2] The briefing and filings associated with Defendants' motion to exclude the testimony of Dr. Laton are found at D.I. 438, D.I. 467, D.I. 476, and D.I. 477.

Wootten, and all others similarly situated (collectively, "Plaintiffs"), (D.I. 464);[3] and (3) Blades Development's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (D.I. 459).[4] For the following reasons, I recommend that the court DENY Defendants' motion to exclude Dr. Laton's testimony, DENY Plaintiffs' motion for certification of an issue class, and DENY Blades Development's motion for summary judgment.

## I.    BACKGROUND

As described in more detail at Sections I.B and II.B.1, *infra*, this is an unusual case beset by numerous delays before, during, and after the briefing on Plaintiffs' motion for class certification. Both sides expended significant time and resources briefing Plaintiffs' motion to certify proposed personal injury and property damage classes under Rule 23(b)(3). (D.I. 356; D.I. 431; D.I. 463) Nearly a year later, Plaintiffs abandoned the proposed Rule 23(b)(3) classes and replaced them with a proposed issue class under Rule 23(c)(4).[5] (D.I. 481) Plaintiffs couched this shift as "an effort to simplify the matters that are currently pending" and did not initially request supplemental briefing on the proposed issue class. (*Id.*) Only after further court-initiated inquiries did Plaintiffs offer a revised class definition and state their position in support of certification under Rule 23(c)(4).[6] (D.I. 487; D.I. 492) Rather than simplifying the

---

[3] The briefing and filings associated with the pending motion for class certification are found at D.I. 356, D.I. 431, D.I. 432, D.I. 463, D.I. 481, D.I. 482, D.I. 487, and D.I. 492.

[4] The briefing and filings associated with Blades Development's motion for summary judgment are found at D.I. 460, D.I. 462, and D.I. 469.

[5] Plaintiffs did not include certification of the issue class among the requested relief in their motion for class certification. (D.I. 355; D.I. 464) However, they discussed a Rule 23(c)(4) issue class in their original briefing on class certification as an alternative argument. (D.I. 356 at 23-25; D.I. 463 at 13-15) On this record, the court declines to find that Plaintiffs waived or forfeited their argument under Rule 23(c)(4) in this case.

[6] Plaintiffs distinguish two precedential Third Circuit cases on their facts without discussing how any of the factors applicable to a Rule 23(c)(4) issue class are satisfied in this case. (D.I. 492 at 3) (distinguishing *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011); *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259 (3d Cir. 2021)). Plaintiffs highlight the Third Circuit's critique of the district court's failure to analyze the issue class factors in *Russell*

2

issues, these filings suggest Plaintiffs belatedly appreciated the weaknesses in their proposed Rule 23(b)(3) classes and expert testimony and shifted strategies at the eleventh hour without a fully developed certification theory under Rule 23(c)(4).

Due to the unique procedural history of this case, the court's recommendations are largely driven by developments postdating the completion of the original briefing on the pending motions. Consequently, the recommendations herein are limited to the unique factual circumstances of this case.

### A.  Facts

This case arises from activities at the sites of two manufacturing facilities located in Blades, Delaware that specialized in chrome plating. Procino was established in 1983 and continues operating today. (D.I. 160 at ¶ 155)  Peninsula Plating ("Peninsula") operated an electroplating facility from 1993 to 1995, when it was forced to cease operations due to a history of noncompliance with industrial waste discharge permits and regulations. (D.I. 462, Ex. A at 4) The operative pleading alleges that the operators of both facilities used and stored products containing perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonate ("PFOS;" together with PFOA, "PFAS"), which are used in hard chrome plating processes and the manufacture of nonstick cookware. (D.I. 160 at ¶¶ 1-2, 5, 18-19, 33)  The Procino and Peninsula facilities are close to the Nanticoke River and municipal and private water supply wells in Blades, Delaware. (*Id.* at ¶ 170)

Blades Development acquired the former Peninsula site for development after entering into a Brownfields Development Agreement ("BDA")[7] with the Delaware Department of Natural

_____

without offering any meaningful discussion of whether and how the court should consider those factors in the instant case. (*Id.*)

[7] According to the Environmental Protection Agency's website, "[a] brownfield is a property where expansion, redevelopment or reuse may be complicated by the presence or potential

Resources and Environmental Control ("DNREC") in December of 2006.[8]  (D.I. 460, Ex. B) The purpose of the BDA was "to assess and respond to the actual, threatened, or perceived release of hazardous substances at the Site and settle and resolve" Blades Development's "potential liability . . . for the Existing Environmental Condition at the Site which might otherwise result" under the Hazardous Substance Cleanup Act ("DHSCA").  (*Id.*, Ex. B at 1)  A Phase II Site Investigation Report was published in February of 2007.  (D.I. 462, Ex. C)  Blades Development formally acquired the Peninsula property in April of 2007.  (D.I. 160 at ¶ 166)  The following month, DNREC adopted a final remediation plan for the former Peninsula site which stated that no further remedial action was required.  (D.I. 460, Ex. C)  In December of 2007, DNREC issued a Certification of Completion of Remedy ("COCR") confirming that remediation of the former Peninsula site was complete.  (*Id.*, Ex. D)

The Procino site also has a history of environmental contamination.  In 2013, Procino's owner pleaded guilty to violations of the Clean Water Act and illegal storage of hazardous waste without a permit stemming from the storage of a tank containing liquid hazardous waste, processing of stored chemicals through Procino's wastewater treatment plant, and discharge of the resulting wastewater.  (D.I. 160 at ¶ 162)  DNREC issued a Final Plan of Remedial Action to address environmental contamination at the Procino site in 2016.  (*Id.* at ¶ 163)

In February of 2018, sample testing by DNREC and the Environmental Protection Agency ("EPA") revealed that the public supply wells in Blades, Delaware were contaminated with PFOA and PFOS at levels exceeding the combined EPA health advisory level ("HAL").

---

presence of a hazardous substance, pollutant or contaminant."  *Overview of EPA's Brownfields Program*, EPA, https://www.epa.gov/brownfields/about (last visited February 9, 2026).
[8] Although the BDA was executed by DNREC and "The Putnam Group and/or its assigns," the parties do not appear to dispute that Blades Development is subject to the terms of the BDA. (D.I. 460 at 2, 4, Ex. B at 1; D.I. 462 at 2)

(D.I. 356, Ex. 1 at § 2.3.3)  Approximately 1,600 Blades residents began receiving alternative water, and a carbon filtration system was installed on the Blades municipal water supply system. (*Id.*, Ex. 1 at §§ 2.3.3, 4.6)  By February 28, 2018, follow-up sampling of the treated municipal water supply "showed non-detect levels for PFAS[.]"  (*Id.*, Ex. 1 at § 2.3.3)

Sampling of private domestic well water outside of Blades was performed in February, March, and April of 2018.  (*Id.*, Ex. 1 at § 2.3.4)  Of the fifty-four domestic wells that were tested for PFAS contamination, seven exceeded the combined HAL.  DNREC provided and installed carbon filter units to all residents with private wells impacted by PFAS above 75% of the HAL, and filters were provided to a total of eight residences.  (*Id.*)  Samples collected after the filter installation had no detected levels of PFAS.  (*Id.*, Ex. 12)

On September 1, 2020, the EPA added the Blades Groundwater Site to the Superfund National Priorities List, rendering Blades eligible for federal funds to facilitate remedial action.[9] Between 2021 and 2023, testing of unfiltered groundwater samples from wells in and around Blades continued to show elevated levels of PFAS, particularly in shallow wells.  (D.I. 356, Exs. 9, 13)

### B. Procedural History

Plaintiffs initially brought this putative class action complaint in Delaware Superior Court on May 17, 2019, asserting causes of action relating to the contamination of public and private water supplies in Blades, Delaware.  (D.I. 1, Ex. A)  On September 6, 2019, 3M removed the action to this court under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (D.I. 1)  Plaintiffs responded with a motion for remand challenging the court's subject matter

---

[9] *See* DNREC, "Blades Groundwater Site" (https://dnrec.delaware.gov/waste-hazardous/remediation/bladesgroundwater-site) (https://archive.is/shQHY) (last visited February 9, 2026).

jurisdiction under 28 U.S.C. § 1332(d)(3) and (4), but they subsequently withdrew the motion pursuant to an agreement reached among the parties. (D.I. 8) The court initiated its own inquiry into the basis for the court's subject matter jurisdiction under CAFA and issued a Memorandum Opinion on December 2, 2021 holding that jurisdiction was proper. (D.I. 86; D.I. 104)

Following several rounds of briefing on motions to dismiss, Plaintiffs filed the third amended complaint ("TAC") on November 21, 2022. (D.I. 160) The TAC sets forth seven causes of action: (1) negligence as to defendant Procino (Count I); (2) negligence as to defendants 3M, EIDP, Atotech, and MacDermid (Count II); (3) breach of implied warranty as to defendants 3M, EIDP, Atotech, and MacDermid (Count III); (4) trespass as to all Defendants (Count IV); (5) private nuisance as to all Defendants (Count V); (6) fraudulent concealment as to defendants 3M, EIDP, Atotech, and MacDermid (Count VI); and (7) conspiracy as to defendants 3M, EIDP, Atotech, and MacDermid (Count VII). (*Id.*) Defendants Atotech, 3M, EIDP, and MacDermid moved to dismiss the TAC, and the court issued a Report and Recommendation from the bench recommending dismissal of all causes of action against the movants except for the negligence claim at Count II of the TAC. (D.I. 200) On August 15, 2023, the Report and Recommendation was adopted. (D.I. 202) After the resolution of the motion to dismiss the TAC, the following causes of action remained:

| CAUSE OF ACTION | DEFENDANT(S) |
| --- | --- |
| Count I: Negligence | Procino |
| Count II: Negligence | Atotech, 3M, EIDP, MacDermid |
| Count IV: Trespass | Procino, Blades Development |
| Count V: Private Nuisance | Procino, Blades Development |

During the successive challenges to the pleadings, the parties requested multiple extensions to delay the issuance of a scheduling order. (D.I. 99; D.I. 149; D.I. 152; D.I. 153; D.I. 155; D.I. 158; D.I. 161; D.I. 165; D.I. 182; D.I. 203) As a result, a scheduling order was not

entered until October 11, 2023, more than four years after the case was filed. (D.I. 218)  Under the original scheduling order, the deadline for the completion of class certification discovery was April 26, 2024 and Plaintiffs' motion for class certification was due by June 21, 2024. (*Id.* at ¶¶ 7, 9)  The scheduling order provided that the remaining deadlines in the case schedule would be set after the motion for class certification was decided. (*Id.* at ¶ 12)

On May 3, 2024, the parties filed a joint motion to amend the scheduling order because they needed additional time to complete class certification discovery. (D.I. 285)  The court granted the motion, extending the class certification discovery deadline to June 25, 2024 and setting a deadline of July 19, 2024 for filing a motion for class certification. (D.I. 286)  This extension proved to be insufficient, and Plaintiffs moved for an additional extension of 90 days to complete class certification discovery. (D.I. 298)  The court denied the motion for an extension of the June 25, 2024 class certification discovery deadline, but it granted a 30-day extension for all briefing on the motion for class certification. (D.I. 327)  With this modification, briefing on the motion for class certification was scheduled to begin on August 19, 2024. (*Id.* at ¶ 5; D.I. 333)  On that date, however, the parties stipulated to another extension of the briefing deadlines. (D.I. 350)  The court granted the requested extension, setting a deadline of August 26, 2024 for Plaintiffs' motion for class certification and setting a deadline of February 4, 2025 for the completion of briefing. (D.I. 352)

In accordance with the extended briefing schedule, Plaintiffs filed their motion for class certification on August 26, 2024, seeking to certify two classes: (1) a personal injury, liability issues only class, and (2) a property damage class. (D.I. 355; D.I. 356 at 7)  Plaintiffs' proposed class definitions were as follows:

> **Personal Injury, Liability Issues Only Class** (Class 1), for both persons who resided in the Town of Blades, Delaware, from 1985 to present, and consumed water from the Town's public water system and as a result were exposed to hazardous chemicals due to Defendants actions; and for persons who resided in or near the Town (Exhibit 1 shows the proposed class boundary), from 1985 to present, and consumed water from private wells and as a result were exposed to hazardous chemicals due to Defendants' actions.

> **Property Damage Class** (Class 2), for persons who currently own properties in or near the Town of Blades, Delaware, whose water is supplied by the Town's public water system, or who own properties with private drinking water wells in or near the town (Exhibit 1 shows the proposed class boundary), whose property values have been diminished due to Defendants' actions.

(D.I. 356 at 7)  Plaintiffs' motion for class certification was supported by the reports of three expert witnesses (Dr. Alan Ducatman, Dr. Richard Laton, and Dr. Kevin J. Boyle) and the report of a fourth witness not designated as an expert (Dr. Stephen King).  (*Id.*, Exs. 7-8, 11, 14)

After Plaintiffs filed their motion for class certification, progress in this action stalled again due to delays in Plaintiffs' production of materials pertaining to their class experts' reports. (D.I. 375)  Pursuant to the parties' stipulation to extend the class certification deadlines, the court entered an amended scheduling order on November 20, 2024 extending the deadline for completion of briefing to May 2, 2025.  (*Id.*; D.I. 377)  Briefing was completed in accordance with the extended schedule when Plaintiffs filed their reply brief on May 2, 2025.  (D.I. 463)

In the meantime, defendants EIDP, MacDermid, and 3M filed motions for summary judgment.  (D.I. 346; D.I. 384; D.I. 393)  In a Report and Recommendation issued on January 29, 2025, the court recommended granting the motions for summary judgment because Plaintiffs offered no evidence to establish a nexus between EIDP, MacDermid, and 3M's products and the PFAS-containing chemicals used at Procino and Peninsula.  (D.I. 412)  On March 19, 2025, the court adopted the Report and Recommendation and terminated EIDP, MacDermid, and 3M from

the case.  (D.I. 451)  Following the resolution of the motions for summary judgment, the

remaining causes of action in this case are as follows:

| CAUSE OF ACTION | DEFENDANT(S) |
| --- | --- |
| Count I: Negligence | Procino |
| Count II: Negligence | Atotech |
| Count IV: Trespass | Procino, Blades Development |
| Count V: Private Nuisance | Procino, Blades Development |

On August 21, 2025, nearly a year after filing their motion for class certification and

more than three months after the completion of briefing, Plaintiffs filed a letter voluntarily

withdrawing their proposed personal injury and property damage classes and stating their

intention to "proceed solely with their request for certification of an issues class under Fed. R.

Civ. P. 23(c)(4)."  (D.I. 481)  In lieu of requesting additional briefing on a proposed issue class,

Plaintiffs referred to their alternative argument for certification of a Rule 23(c)(4) issue class in

their opening and reply briefs.  (*Id.*) (citing D.I. 356 at 23-25; D.I. 463 at 13-15).  Plaintiffs did

not propose a new class definition, but they identified the common issues as: (1) whether

Defendants discharged PFAS into the environment, (2) whether those discharges contaminated

municipal and private water systems, and (3) whether Defendants' conduct breached applicable

duties of care.  (*Id.*)  Plaintiffs also withdrew three of the four declarations submitted in support

of the class certification motion which were the subject of pending *Daubert* motions and a

motion to strike.  (*Id.*)

The court ordered the parties to submit a joint status letter on September 3, 2025

addressing the impact of Plaintiffs' voluntary withdrawals on the status of the pending motions.

(8/25/2025 Oral Order)  Plaintiffs offered the following definition of their proposed issue class

for the first time in the joint status letter: "Persons who currently own property within the

proposed class area and persons who resided within the proposed class area for six months or

9

more from 1985 to present and who have been diagnosed with an ailment associated with PFAS exposure." (D.I. 487 at 1)  Plaintiffs acknowledged that the existing class certification briefing "was focused almost entirely on the non-issues classes" and requested leave to re-brief the class certification motion to address the merits of the proposed issue class. (*Id.* at 1 n.1)  Defendants opposed Plaintiffs' request to re-brief the motion, emphasizing the delays that have already beset this litigation and the lack of good cause to restart class certification briefing beyond the deadlines in the scheduling order. (*Id.* at 2)  Defendants also offered substantive arguments in opposition to the proposed issue class. (*Id.* at 3-4)

The court gave Plaintiffs an opportunity to respond to Defendants' substantive arguments in a letter brief of equivalent length, which was due on October 8, 2025. (D.I. 491)  Plaintiffs' responsive letter confirms a distinction within the proposed issue class between personal injury plaintiffs "who resided within the proposed class area for six months or more from 1985 to present and who have been diagnosed with an ailment associated with PFAS exposure," and property damage plaintiffs "who currently own property within the proposed class area." (D.I. 492 at 2)  The responsive letter also represents for the first time that the proposed class area "is described in the affidavit of Dr. Laton." (D.I. 492 at 2; D.I. 356, Ex. 11)

## II.   DISCUSSION

### A.  Motion to Exclude the Testimony of Dr. Laton

As explained at § I.B, *supra*, Plaintiffs have voluntarily withdrawn the testimony of Dr. Ducatman, Dr. Boyle, and Dr. King for purposes of class certification. (D.I. 487 at 1)  Plaintiffs continue to rely on Dr. Laton's expert testimony in support of their motion for class certification, and Defendants' motion to exclude Dr. Laton's testimony remains pending. (*Id.*; D.I. 437)  The Third Circuit has held that a plaintiff cannot use challenged expert testimony to satisfy the

requirements of class certification unless the plaintiff first shows that the expert testimony

satisfies the *Daubert* standard. *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187-88

(3d Cir. 2015). Consequently, the court addresses Defendants' motion to exclude Dr. Laton's

testimony before considering Plaintiffs' class certification motion.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Federal

Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" to "ensur[e] that an

expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509

U.S. 579, 597 (1993). Rule 702 provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if: (a) the expert's
> scientific, technical, or other specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in issue; (b) the testimony is based
> on sufficient facts or data; (c) the testimony is the product of reliable principles
> and methods; and (d) the expert has reliably applied the principles and methods to
> the facts of the case.

Fed. R. Evid. 702. In this regard, "Rule 702 embodies a trilogy of restrictions on expert

testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320

F.3d 396, 404-05 (3d Cir. 2003). Here, Defendants challenge the reliability of Dr. Laton's

testimony. (D.I. 438 at 10-15)

The court considers "the methodology, the facts underlying the expert's opinion, [and] the

link between the facts and the conclusion" in evaluating whether each step of an expert's

analysis is reliable. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012) (internal

citations and quotation marks omitted). "The standard for reliability is not that high. It is lower

than the merits standard of correctness." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81

(3d Cir. 2017) (internal citations and quotation marks omitted). Expert testimony is considered

reliable if it is supported by "good grounds," even if it is not necessarily supported by "the best

methodology or unassailable research."[10]  *Id.*  In keeping with these tenets, Rule 702 "has a liberal policy of admissibility."  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal citations and quotation marks omitted).

Plaintiffs emphasize the narrow purpose for which Dr. Laton's testimony is offered: "to define an outer class boundary" in support of Plaintiffs' proposed issue class under Rule 23(c)(4).  (D.I. 467 at 5; D.I. 492)  Plaintiffs expressly concede that "Dr. Laton's testimony was not presented for the purpose of proving the *source* the PFAS contamination" or "the cause of the plume."  (D.I. 467 at 1) (emphasis in original).  These representations correctly confirm that Dr. Laton's testimony is insufficient to sustain Plaintiff's ultimate burden on causation or the merits of the case.  Plaintiffs posit that allowing Dr. Laton's testimony at the class certification stage "in no way commits one to view that use of such a methodology would be appropriate at the liability stage." (*Id.* at 5)  Even considering the limited purpose for which Dr. Laton's testimony is offered and the liberal policy of admissibility under Rule 702 and Third Circuit precedent, Defendants' motion to exclude Dr. Laton's testimony presents a close question.

As it pertains to Plaintiffs' proposed issue class, Dr. Laton's testimony is relevant to establishing the proposed "class area" based on the scope of the contamination plume.  (D.I. 492 at 2; D.I. 356, Ex. 11 at ¶ 10)  To determine the class area, Dr. Laton reviewed DNREC's

---

[10] The Third Circuit has articulated numerous non-dispositive factors to assist in determining whether "good grounds" support an expert's potential testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Pineda*, 520 F.3d at 247-48.

sampling data from public supply wells in Blades in January of 2018, EPA testing data from 54 domestic water wells in February of 2018, the results of testing from monitoring wells installed by the EPA in October of 2018, and the results of PFAS analyses on treated drinking water samples from Blades in June and October of 2022.  (D.I. 356, Ex. 11 at ¶¶ 13-18)  Using this data, Dr. Laton prepared maps[11] showing the maximum recorded levels of PFOA and PFOS concentrations in and around Blades, Delaware:



---

[11] The maps included in this Report and Recommendation are included to show the colored dots indicating the location of alleged PFOA and PFOS contamination in relation to the class boundary proposed by Dr. Laton, indicated in pink in the third map.  Although the text in the maps and corresponding legends is not legible due to the scaling of the images, that text does not reflect the primary purpose for which the maps are included.



(D.I. 356, Ex. 11 at ¶¶ 9-22 & Exs. H-I)  Dr. Laton then prepared another map delineating the

boundaries of the contaminated area based on the locations where concentrations of PFOA and

PFOS were found in the groundwater:



(*Id.*, Ex. 11 at Ex. J)

Defendants contend that Dr. Laton's map of the "Impacted Area" is unreliable for three reasons: (1) Dr. Laton cherry-picked data reflecting the highest PFAS concentration from a larger pool of data, (2) Dr. Laton did not account for the effectiveness of filtration in removing PFAS from the Blades drinking water supply, and (3) Dr. Laton does not explain how the "Impacted Area" boundary line was drawn.  (D.I. 438 at 10-15)  The first and second issues raised by Defendants have no clear application to Plaintiffs' proposed issue class definition.[12] Both arguments are based on the premise that Dr. Laton's analysis is unreliable because it fails to account for varying levels of PFAS exposure experienced by Plaintiffs across a period of time.

---

[12] In response to the court's inquiry after Plaintiffs introduced their proposed Rule 23(c)(4) issue class, Defendants represented that they were "not withdrawing any parts of their briefing on the . . . motion to exclude the testimony of Dr. Laton."  (D.I. 487 at 4)

As Plaintiffs explain, however, Dr. Laton's analysis does not touch on the ultimate liability issue of exposure levels in residents. (D.I. 467 at 5)

Defendants' third argument presents a closer question. Dr. Laton explains that he relied on objective testing data by DNREC and the EPA to define the "Impacted Area." (D.I. 356, Ex. 11 at ¶¶ 11-19) The "Methodology" portion of Dr. Laton's expert report indicates that he mapped the DNREC and EPA testing data and drew a perimeter around it. (*Id.*, Ex. 11 at ¶¶ 20-25) He acknowledges that certain well samples within the boundary reported non-detect levels of PFAS, but he infers that PFAS contamination nonetheless reached those wells due to their proximity to a well with detected PFAS levels. (*Id.*, Ex. 11 at ¶ 21) Dr. Laton does not name a specific scientific methodology or existing standard governing his analysis. In this regard, his assessment approaches the realm of "unsupported speculation" and "haphazard, intuitive inquiry." *Karlo*, 849 F.3d at 80-81; *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000).

Nonetheless, "[t]he grounds for the expert's opinion merely have to be good, they do not have to be perfect." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) (explaining that "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence." (internal citations and quotation marks omitted)). The boundary drawn by Dr. Laton in Exhibit J is based on objective data corresponding to the Blades town limits and the area outside of Blades where private wells tested positive for PFAS contamination in Exhibits H and I. (D.I. 356, Ex. 11 at Ex. J) Defendants challenge Dr. Laton's inclusion of an area containing wells with non-detectable or minimal levels of PFAS contamination interspersed with others containing meaningful levels of PFAS contamination. (D.I. 438 at 14; D.I. 476 at 10; D.I. 356, Ex. 11 at Exs. H-I) But this argument describes

potential methodological flaws that go to the weight of the evidence, not its admissibility. *See Karlo*, 849 F.3d at 83.

The non-binding case authority Defendants cite in their reply brief weighs against their argument to exclude Dr. Laton's report. (D.I. 476 at 10) Both environmental contamination cases arose in the context of a motion for class certification, as opposed to a motion to exclude expert testimony. *See Cox v. American Synthetic Rubber Co.*, 2008 WL 5381909, at *2 (W.D. Ky. Dec. 18, 2008); *Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *11 (S.D. Fla. May 2, 2018). In both cases, the court accepted expert testimony supporting the proposed class area and proceeded to rule on the sufficiency of that evidence to satisfy the class certification requirements under Rule 23. *Id.* For example, in *Cotromano*, the court assumed without deciding that the testimony of plaintiffs' groundwater and real estate appraisal experts was admissible before concluding that the expert evidence did not support the ascertainability of the proposed class area. 2018 WL 2047468, at *10-11 (finding both class boundary definitions "to be over-inclusive . . . even assuming the admissibility of expert liability evidence on groundwater and soil migration[.]").

In *Cox v. American Synthetic Rubber Co.*, the district court explained that that the plaintiffs must produce "scientific or objective" evidence linking the proposed boundary to the environmental hazard to prevail on class certification. 2008 WL 5381909, at *2 (W.D. Ky. Dec. 18, 2008). To meet this standard, the plaintiffs produced evidence from their expert, who took samples at seventeen sites within a limited geographic area that did not extend to the proposed class boundary. *Id.* The court determined that the expert's testing was insufficient to define the class area because the sampling "fail[ed] completely to cover the breadth of the proposed class. Without testing the boundaries, there is no basis for linking the boundaries to Defendant's

actions at all." *Id.* The court rejected the class boundary not because the expert used sampling data to locate contamination, but rather because the contaminated locations bore little relation to the proposed class boundary. Here, Defendants do not suggest that the testing data used by Dr. Laton fails to encompass "large swaths" of the proposed class area. (D.I. 438 at 14-15; D.I. 476 at 10)

Defendants cite another case where Dr. Laton's expert testimony was partially excluded. (D.I. 438 at 6) In *Goldstein v. Exxon Mobil Corp.*, Dr. Laton evaluated air samples to assess the concentrations of certain contaminants, and he suggested that the contamination emanated from a particular source despite acknowledging the need for further testing to verify the source. 2019 WL 4575569, at *3 (C.D. Cal. Mar. 19, 2019). The court sustained a narrow objection to Dr. Laton's statement on a potential source of the contamination, while also observing that "this is not the kind of evidence that would have a meaningful impact on the outcome of Plaintiff's motion for class certification." *Id.* at *3 n.2. The same is true here. For purposes of Plaintiffs' class certification motion, the relevance of Dr. Laton's testimony is limited to the boundary of the class area. The weight assigned to that opinion is a separate matter addressed in the court's class certification analysis under Rule 23:

> [O]pinion testimony should not be uncritically accepted as establishing a Rule 23 requirement merely because the court holds the testimony should not be excluded, under *Daubert* or for any other reason. . . . Like any evidence, admissible expert opinion may persuade its audience, or it may not.

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2008) (citations and footnote omitted). Accordingly, I recommend that the court DENY the motion to exclude Dr. Laton's testimony to the extent the opinion is offered for the sole purpose of establishing the boundary of the impacted area with respect to the proposed issue class.

## B. Motion for Class Certification[13]

As described at § I.B, *supra*, Plaintiffs no longer seek certification of the personal injury and property damage classes under Rule 23(b)(3) and instead request certification of their proposed issue class under Rule 23(c)(4). Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). A party seeking to certify "particular issues" for class treatment under Rule 23(c)(4) must show that the prerequisites of Rule 23(a) and (b) are satisfied. *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 266-67 (3d Cir. 2021). First, the movant bears the burden of showing by a preponderance of the evidence that the four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 391 (3d Cir. 2015). Next, the movant must show that the issues (as opposed to the cause of action as a whole) are maintainable under the predominance and superiority requirements of Rule 23(b)(3).[14] *Russell*, 15 F.4th at 267, 273-74 (internal citations omitted). In the Third Circuit, putative class members must also be "currently and readily ascertainable based on objective criteria." *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 129, 138 (3d Cir. 2023) (quoting *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020)).

---

[13] Although Plaintiffs' proposed issue classes were not raised in the original complaint or the notice of removal, jurisdiction under 28 U.S.C. § 1332(d) is determined at the time a claim is filed or removed. *Coba v. Ford Motor Co.*, 932 F.3d 114, 119 (3d Cir. 2019). Thus, Plaintiffs' modification of the class definition and/or the recommendation to deny Plaintiffs' motion for class and/or issue certification do not divest the court of subject matter jurisdiction under CAFA, which was previously established by the court in this matter. *Id.*; (D.I. 200; D.I. 202).

[14] In the briefing on their motion for class certification, Plaintiffs did not present any argument under Rule 23(b)(1) or (2) and instead limited their argument to the application of Rule 23(b)(3). (D.I. 356 at 19-23; D.I. 463 at 8-13) Plaintiffs did not separately address any of the requirements under Rule 23(a) or (b) in their submissions made in support of the proposed issue class under Rule 23(c)(4). (D.I. 487 at 1; D.I. 492)

If the proposed issue class satisfies the ascertainability requirement and the requirements of Rule 23(a) and (b), the court must next determine whether it is "appropriate" to certify the issues as a class. *See Russell*, 15 F.4th at 270. An issue class should only be certified if class resolution of the issues "will fairly and efficiently advance the resolution of class members' claims, including resolution of remaining issues." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 272–73 (3d Cir. 2011). In reaching this determination, the trial court may consider the following non-exclusive *Gates* factors: (1) the type of claim(s) and issue(s) in question; (2) the overall complexity of the case; (3) the efficiencies to be gained by granting partial certification; (4) the substantive law underlying the claim(s); (5) the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); (6) the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; (7) the repercussions certification of an issue class will have on the effectiveness and fairness of resolution of remaining issues; (8) the impact individual proceedings may have upon one another; and (9) the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s). *See Russell*, 15 F.4th at 268.

### 1. Status of Briefing on Rule 23(c)(4) Issue Class

Before turning to the merits of Plaintiffs' motion for class certification, the court addresses the status of the briefing on the pending class certification motion. As set forth at Section I.B, *supra*, Plaintiffs briefed their motion for class certification over the course of nearly a year, focusing on a proposed personal injury class and a proposed property damage class under Rule 23(b)(3). (D.I. 356 at 7; D.I. 463) Although Plaintiffs' original class certification briefing raised the potential for certifying an issue class under Rule 23(c)(4) as an alternative remedy, the

matter "ha[d] not been fulsomely briefed." (D.I. 356 at 23-25; D.I. 463 at 13-15; D.I. 487 at 1)

Nonetheless, Plaintiffs did not request additional briefing or propose an issue class definition

when they withdrew their personal injury and property damage classes and decided to proceed

only on the Rule 23(c)(4) issue class. (D.I. 481); *see* Fed. R. Civ. P. 23(c)(1)(B) ("An order that

certifies a class action must define the class *and* the class claims, issues, or defenses[.]"

(emphasis added)). Instead, Plaintiffs referred to the Rule 23(c)(4) arguments raised in their

original briefing. (D.I. 481)

Plaintiffs' position on the status of class certification briefing began to shift only after the

court inquired about the definition of the proposed issue class and the applicability of the

existing briefing. (8/25/2025 Oral Order) In response to the court's order, Plaintiffs provided an

issue class definition and proposed the submission of "new, tailored class-certification briefing

. . . . focused on what is most relevant to the Court for the class currently proposed[.]" (D.I. 487

at 1) Plaintiffs represented that any additional briefing "could be substantially shorter,"

suggesting page limits "of half the length contemplated by Local Rule 7.1.3(4)[,]" which equates

to ten double-spaced pages or five single-spaced pages. (*Id.*); *see* D. Del. LR 7.1.3(2), (4).

Defendants opposed Plaintiffs' request to re-brief the class certification motion, characterizing it

as a motion to amend the class certification schedule without a showing of good cause under

Rule 16(b)(4). (D.I. 487 at 2) Defendants also raised substantive challenges to Plaintiffs'

proposed issue class. (*Id.* at 3-4)

Following a review of the parties' joint status letter, the court partially granted Plaintiffs'

request for further briefing on the proposed issue class. Specifically, the court permitted

Plaintiffs to file a single-spaced, three-page letter in response to the substantive arguments raised

by Defendants in the parties' joint status letter. (D.I. 491) The court declined to grant Plaintiffs

the requested equivalent of five single-spaced pages and/or a new, expedited briefing schedule

because: (1) Plaintiffs' Rule 23(c)(4) argument was available to them at the time the class

certification motion was originally filed, (D.I. 356 at 23-25); (2) Plaintiffs previously represented

that certification of the Rule 23(c)(4) issue class could be resolved on the papers submitted, (D.I.

481); (3) Plaintiffs did not support their request for further briefing with citations to changes in

the record or the discovery of new evidence, (D.I. 487 at 1); and (4) the scope of briefing

requested by Plaintiffs posed an untenable risk of further delays in this aging case.

A review of Plaintiffs' supplemental letter confirms that the full scope of briefing

requested by Plaintiffs would not advance the court's resolution of the class certification motion.

(D.I. 492)  Instead of maximizing their use of the allotted pages, Plaintiffs began their

substantive response to Defendants' arguments on the second page of the three-page letter.  (*Id.*)

Plaintiffs' own conduct demonstrates that they had an adequate opportunity to raise their

arguments in support of the proposed issue class under Rule 23(c)(4), and further briefing is not

warranted.  *See Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130, 138 (3d Cir. 2007) (finding

that the district court did not abuse its discretion by denying the plaintiff's request to file an

overlength brief because the plaintiff had an adequate opportunity to raise his arguments in the

standard briefing).

### 2.  Ascertainability

In the Third Circuit, an "essential prerequisite of a class action . . . is that the class must

be currently and readily ascertainable based on objective criteria."  *Marcus v. BMW of N. Am.,*

*LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012).  To establish ascertainability, the movant must show

that "there [is] a reliable and administratively feasible mechanism for determining whether

putative class members fall within the class definition," and the class can be defined "with

reference to objective criteria." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013). The purpose of the ascertainability requirement is to "assure[ ] that a court will not need to engage in extensive fact-finding to identify the members of the class." *In re Intel Corp. Microprocessor Antitrust Litig.*, 05-1717-LPS, 2014 WL 6601941, at *12 (D. Del. Aug. 6, 2014) (citing *Marcus*, 687 F.3d at 592-93). The movant bears the burden of showing ascertainability by a preponderance of the evidence. *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020).

Plaintiffs have not met their burden to show the ascertainability of the personal injury portion of their issue class definition, which includes "persons who resided within the proposed class area for six months or more from 1985 to present and who have been diagnosed with an ailment associated with PFAS exposure." (D.I. 487 at 1) Plaintiffs argue that this definition resolves Defendants' concerns about the ascertainability of the personal injury class because it is no longer premised on water consumption and attendant exposure, and it is now limited only to those whose exposure "objectively resulted in injury." (D.I. 492 at 2) According to Plaintiffs, members of the issue class can be identified through objective criteria such as water billing records, water sampling reports, property ownership databases, census data and other unspecified records. (D.I. 356 at 11; D.I. 463 at 2; D.I. 492 at 2)

The objective criteria identified by Plaintiffs are not sufficient to ascertain members of the proposed personal injury issue class. Property ownership databases and municipal water billing records may identify owners of the impacted properties, but Plaintiffs have not shown how these records will identify non-owners who resided within the proposed class area. Moreover, Plaintiffs do not identify a form of census data collected with sufficient frequency to accurately identify all individuals who resided in the proposed class area "for six months or

more." It is also not clear from Plaintiffs' briefing that water sampling reports will capture all residences with private wells in the proposed class area. Plaintiffs do not identify any method for ascertaining which residents "have been diagnosed with an ailment associated with PFAS exposure."[15] (D.I. 487 at 1)

On this record, Plaintiffs have not met their burden to "propose a classification method with evidentiary support to meet the ascertainability requirement[.]" *In re Niaspan*, 67 F.4th 129-30; *see also Campbell v. County of Mercer*, 2025 WL 1358529, at *3 (W.D. Pa. Mar. 3, 2025) ("The class must be ascertainable in the here and now, the method must be spelled out, and if there is any doubt, class certification is denied[.]"). Consequently, I recommend that the court DENY Plaintiffs' motion to certify an issue class of "persons who resided within the proposed class area for six months or more from 1985 to present and who have been diagnosed with an ailment associated with PFAS exposure." (D.I. 487 at 1)

Plaintiffs have also failed to show by a preponderance of the evidence that the proposed issue class of "[p]ersons who currently own property within the proposed class area" is ascertainable. The proposed "class area" is not clearly defined in Plaintiffs' issue class definition. Initially, Plaintiffs implied that the proposed "class area" of the issue class was consistent with the class boundary associated with the original personal injury and property damage class definitions.[16] (D.I. 481; *see* D.I. 356 at 7, 23-25) Those definitions stated that "Exhibit 1 shows the proposed class boundary[.]" (D.I. 356 at 7) Exhibit 1 to Plaintiffs' opening

---

[15] Plaintiffs withdrew the testimony of their toxicology expert, Dr. Ducatman, who identified a list of ailments allegedly associated with PFAS exposure. (D.I. 356, Ex. 8 at 2; D.I. 487 at 1) Plaintiffs also fail to identify any evidence of record associating Caporale's ailments with PFAS exposure. (*Cf.* D.I. 432, Ex. G at 12)

[16] Plaintiffs did not redefine the class area when they withdrew their proposed personal injury and property classes, nor did they include a new definition of the class boundary when they first articulated their proposed issue class definition pursuant to the court's August 25, 2025 Oral Order. (D.I. 481; D.I. 487 at 1; 8/25/2025 Oral Order)

brief is more than 2,000 pages in length.  (*Id.*; D.I. 356-1)  Plaintiffs' reply brief clarifies that

"[t]he geographic boundaries are defined by documented EPA plume maps" in Exhibit 1.  (D.I.

463 at 2)  These maps identify the boundaries of the Procino and Peninsula sites and the Blades

perimeter, but they do not establish a perimeter around private wells located outside the town

limits of Blades:



(D.I. 356-1 at 50)  Current property owners "within the proposed class area" are not objectively

ascertainable based on this evidence.

For the first time in their three-page letter brief filed on October 8, 2025, Plaintiffs allege

that "[t]he class area is described in the affidavit of Dr. Laton, D.I. 356-19, which Plaintiffs have

not withdrawn."  (D.I. 492 at 2)  Plaintiffs do not provide a more specific citation to this 55-page

exhibit, which was filed on August 26, 2024 as an attachment to Plaintiffs' opening brief on class

certification but was not cited in the accompanying brief to establish the proposed class

boundary.  (D.I. 356, Ex. 11)  Even assuming Plaintiffs' new argument regarding the definition

of the "class area" is not forfeited,[17] *see In re Niaspan*, 67 F.4th at 135, Plaintiffs' citation to Dr. Laton's affidavit in its entirety requires the court to draw inferences about which portions of the affidavit define Plaintiffs' proposed class area. Plaintiffs' passing reference to Dr. Laton's affidavit does not satisfy their burden to show by a preponderance of the evidence that the "class area" is ascertainable.

In the interest of resolving Plaintiffs' class certification motion on the merits, the court considers paragraph 22 of Dr. Laton's affidavit, which indicates that "Exhibit 'J' shows the area of groundwater impacted by PFOS and PFOA which was prepared by combining the regions that encompass the '*Blades Water Service Area*' and '*Private Well Area*.'" (D.I. 356, Ex. 11 at ¶ 22) Exhibit J to Dr. Laton's affidavit sets forth a perimeter for the "Impacted Area" in and around Blades, Delaware:

---

[17] Plaintiffs had the opportunity to support their proposed "class area" by referring to Dr. Laton's affidavit in their definition of the "proposed class boundary" in the original proposed class definitions, in their initial letter asserting the proposed issue class, and/or in the joint letter setting forth their proposed issue class definition. (D.I. 356 at 7; D.I. 481; D.I. 487) They did not do so. Plaintiffs cite to Dr. Laton's affidavit twice in their opening brief on class certification. Neither citation refers to the map at Exhibit J purportedly identifying the "Impacted Area." (D.I. 356 at 8 & n.26, 19 & n.42)



(*Id.*, Ex. 11 at Ex. J)  Public property records may objectively establish the current owners of

residences falling within this boundary.  *See Brown v. Saint-Gobain Performance Plastics*, 2023

WL 9023158, at *10 (D.N.H. Dec. 29, 2023) (explaining that current property owners could be

ascertained using state property records and tax bills).  Operating under this definition of the

proposed "class area," the court proceeds to assess Plaintiffs' proposed issue class of "[p]ersons

who currently own property within the proposed class area" under the requirements of Rule 23(a)

and (b) and the *Gates* factors applied to the Rule 23(c)(4) analysis.

### 3.  Requirements Under Rule 23(a) and (b)

A party seeking certification of an issue class under Rule 23(c)(4) must demonstrate that

the requirements of Rule 23(a) and (b) are satisfied.  *Russell*, 15 F.4th at 266-67.  The Third

Circuit has recognized the challenges inherent in this inquiry, acknowledging that "[t]he

interaction between the requirements for class certification under Rule 23(a) and (b) and the

authorization of issue classes under Rule 23(c)(4) is a difficult matter that has generated divergent interpretations among the courts." *Gates*, 655 F.3d at 272 (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200 n.25 (3d Cir. 2009)). The parties' briefing on these issues following Plaintiffs' assertion of the proposed issue class does little to address those difficulties. (D.I. 487; D.I. 492) For purposes of proceeding to the next step in this analysis, the court assumes without deciding that Plaintiffs' proposed issue class of "[p]ersons who currently own property within the proposed class area" satisfies the requirements of Rule 23(a) and (b).

### 4. Rule 23(c)(4) *Gates* Factors: Appropriateness

As previously discussed, courts assessing a motion to certify an issue class under Rule 23(c)(4) consider the following *Gates* factors: (1) the type of claim(s) and issue(s) in question; (2) the overall complexity of the case; (3) the efficiencies to be gained by granting partial certification; (4) the substantive law underlying the claim(s); (5) the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); (6) the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; (7) the repercussions certification of an issue class will have on the effectiveness and fairness of resolution of remaining issues; (8) the impact individual proceedings may have upon one another; and (9) the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s). *See Russell*, 15 F.4th at 268.

Plaintiffs have not shown that certification of the proposed issue class would materially advance the resolution of the class members' claims under the *Gates* factors. The common issues identified by Plaintiffs are: (1) "whether Defendants discharged PFAS into the

environment," (2) "whether those discharges contaminated municipal and private water systems," and (3) "whether Defendants' conduct breached applicable duties of care." (D.I. 481) Plaintiffs concede that both the fact and amount of damages will require resolution on an individualized basis after a class-wide determination of these common issues. (D.I. 492 at 3) Plaintiffs also acknowledge that individualized questions of causation will remain after the resolution of common issues. (*Id.* at 2; D.I. 463 at 15) Under similar circumstances, the Third Circuit declined to certify a Rule 23(c)(4) issue class in a groundwater contamination case because "resolution of [common] questions leaves significant and complex questions unanswered." *Gates*, 655 F.3d at 273.

In *Gates*, the residents of a village sought certification of a medical monitoring class and a property damage class for injuries sustained after the defendant allegedly released contaminants into a lagoon that seeped into an underground aquifer, where those contaminants degraded into vinyl chloride. *Id.* at 258. After denying certification of the medical monitoring and property damage classes, the district court alternatively considered certification of an "issue only" class on liability to address common issues, such as whether vinyl chloride was released from the defendant's facility or whether exposure to vinyl chloride can increase the risk of developing brain cancer. *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 234 (E.D. Pa. 2010). Ultimately, the district court declined to certify a liability-only issue class because the common evidence would not establish the fact or amount of damages, causation, and the extent of contamination. *Gates*, 655 F.3d at 262, 272. The Third Circuit affirmed. *Id.* at 274.

Here, as in *Gates*, the certification of a liability-only issue class is not warranted due to the complexity of the case and the limited efficiencies to be gained by granting partial certification. Answering the questions of "whether Defendants discharged PFAS into the

environment" and "whether those discharges contaminated municipal and private water systems" will not fully establish causation where, as here, there are multiple Defendants, multiple contaminants, and likely alternative sources of contamination. Recognizing the complexities involved in environmental contamination cases, the Third Circuit has explained that "[s]ingle instances or simple theories of contamination may be more apt for consolidated proceedings than extensive periods of contamination with multiple sources and various pathways." *Gates*, 655 F.3d at 271; *see also Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 585 F. Supp. 3d 646, 657 (E.D. Pa. 2022) (denying issue class certification where the case "involve[d] multiple instances of exposure and injuries that will vary significantly from property to property" and the "theories of causation and extent of injury also turn[ed] on several complex factors" that could not be established on a class-wide basis).

Similarly, determining "whether Defendants' conduct breached applicable duties of care" will require separate analyses for each Defendant to account for Defendants' disparate geographic locations and roles in the alleged contamination.[18] Defendants' alleged breach "does not easily separate from the individual issues of injury, causation, and damages." *See Derrick v. Glen Mills Schs.*, 2024 WL 2134340, at *15 (E.D. Pa. May 13, 2024) (citing *Gates*, 655 F.3d at 273). To the extent that Plaintiffs establish a common legal duty applicable to all Defendants, Plaintiffs have not shown that resolution of the issue would result in significant efficiency gains. And certification of an issue class on matters of duty and breach is also likely to adversely impact the effectiveness and fairness of resolving the remaining issues. For example, if it is

---

[18] The briefing on Blades Development's motion for summary judgment, discussed at Section II.C, *infra*, illustrates some of these distinctions. (D.I. 460; D.I. 462; D.I. 469) Unlike Procino, Blades Development allegedly acquired the Peninsula site as a Brownfields Developer after the PFAS contamination occurred. (D.I. 462-16 at ¶¶ 4, 7-10)

determined that a particular Defendant breached a duty, that Defendant may be pressured to settle even if the breach did not ultimately cause the alleged harm. *See Russell*, 15 F.4th at 272.

On balance, the *Gates* factors weigh against certification of the proposed issue class. Plaintiffs have not shown that certification of the issue class would meaningfully advance the litigation. Moreover, Plaintiffs' eleventh hour pivot to seek certification of the proposed issue class suggests Rule 23(c)(4) is being invoked "merely to postpone confronting difficult certification questions." 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1790 (3d ed. 2025). "Unlike a situation in which a Rule 23(c)(4) class might be appropriate because liability is capable of classwide treatment but damages are not, Plaintiffs offer no theories of liability for which classwide treatment is apt." *Gonzalez v. Corning*, 885 F.3d 186, 202-03 (3d Cir. 2018). Consequently, I recommend that the court DENY Plaintiffs' motion for certification of an issue class under Rule 23(c)(4).

### C. Blades Development's Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322–23. The burden then shifts to the non-movant to

31

demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). The court must draw all reasonable inferences in favor of the nonmoving party without weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

Before filing the pending motion for summary judgment, Blades Development moved to dismiss for failure to state a claim on December 23, 2021. (D.I. 115) In pertinent part, Blades Development argued that its entry into the BDA with DNREC immunized it from liability for trespass and nuisance arising from the site under 7 *Del. C.* § 9125 of the Delaware Hazardous Substances Cleanup Act ("DHSCA"). (D.I. 116 at 4-6) On August 4, 2022, the court issued a Report and Recommendation rejecting Blades Development's immunity argument. (D.I. 135) Specifically, the court questioned whether 7 *Del. C.* § 9125 could immunize a Brownfields Developer from tort liability to private parties resulting from the developer's ownership and use of its land. (*Id.* at 23) The court indicated that the immunity provided by Section 9125 appeared to be limited to immunity from liability for claims arising under the DHSCA, and Blades Development cited no authority to suggest that the DHSCA preempts common law actions for trespass or nuisance. (*Id.*) Nonetheless, the court confirmed that Blades Development could challenge liability for trespass and nuisance in case dispositive motions at the appropriate time, so long as it supported those arguments with evidence:

> One might question whether Plaintiffs are likely to prevail against Blades
> Development given that DNREC apparently thought in 2007 that the Peninsula
> site required no further cleanup action. But it is not the role of the Court to assess
> likelihood of success at the motion to dismiss stage. All I can say now is that
> Blades Development has not persuaded me that it is immune from liability to
> Plaintiffs under 7 *Del. C.* § 9125. Blades Development is free to reraise its

arguments against liability—and to cite evidence in support of its arguments—at the appropriate time in a later stage of the case.

(*Id.*) On August 19, 2022, the Report and Recommendation was adopted. (D.I. 137)

Instead of overcoming the deficiencies previously identified by the court at the pleading stage, Blades Development raises the same immunity argument in its motion for summary judgment. (D.I. 460 at 4-7) The argument is largely copy/pasted from Blades Development's brief in support of its motion to dismiss, and it references the same exhibits cited in support of the motion to dismiss. (*Compare* D.I. 460 at 4-7 *with* D.I. 116 at 4-6)[19] Blades Development does nothing to address or resolve the court's concern that "[t]he texts of §§ 9105 and 9125, and their placement in the DHSCA, suggest that the immunity provided by § 9125 might be limited to immunity from liability for claims arising under the DHSCA."[20] (D.I. 135 at 23)

Blades Development contends that the court invited it to revisit this argument at a later stage in the litigation. (D.I. 460 at 2-3) Nothing in the prior Report and Recommendation suggests that Blades Development was free to recycle the same immunity argument on summary judgment without further development of the factual record or citation to supporting legal authority. In fact, the court expressly instructed Blades Development "to cite evidence in support of its arguments" if it chose to "reraise its arguments against liability[.]" (D.I. 135 at 23) Denial of Blades Development's motion for summary judgment is warranted on this basis alone. *See Price v. Kozak*, 569 F. Supp. 2d 398, 407 (D. Del. 2008) (denying motion for summary

---

[19] The only new portion of Blades Development's argument on summary judgment is its citation to 7 *Del. C.* § 9105(c)(2), which provides that the operator of a facility is immune from liability when it "had no knowledge or reason to know of any release or imminent threat of release" at the time it acquired the facility. (D.I. 460 at 6) For the reasons described herein, Blades Development has not established that Section 9105(c)(2), or any other provision of the DHSCA, governs liability for any claim beyond the costs of remediation of a contaminated site.

[20] Blades Development asserts that "the BDA agreement . . . immunizes Blades Development from claims arising under [the DHSCA]," but Plaintiffs have not brought a cause of action against Blades Development for violations of the DHSCA. (D.I. 460 at 4)

judgment that raised same exhaustion argument previously raised in support of a motion to dismiss, without the presentation of additional evidence).

Consideration of the immunity argument on the merits does not alter the court's recommendation. Case authority cited by Plaintiffs supports the court's prior assessment of Blades Development's immunity argument. In *Garvin v. Booth*, the Delaware Superior Court explained that the intent of the DHSCA is to "requir[e] the prompt cleanup of hazardous substances to protect Delaware's citizens' welfare and environment." 2022 WL 247696, at *9 (Del. Super. Ct. Jan. 27, 2022).[21] To achieve this goal, the DHSCA "permits DNREC to identify a site, create a plan for cleanup, and then contract with private parties to remediate the site so . . . those parties can develop them." *Id.* at *10. The purpose of the DHSCA, as articulated by *Garvin*, is to govern the remediation of contaminated sites and the recovery of remedial costs incurred in the restoration process. *Id.*; *see also Clark v. Teveen Holding Co., Inc.*, 625 A.2d 869, 879 (Del. Ch. 1992) ("7 *Del. C.* § 9105(d) provides an express private right to contribution or reimbursement against other responsible parties on behalf of a claimant who expended money performing a remedial action in satisfaction of the substantive requirements of the statute."). Blades Development has still cited no authority supporting an expansion of the DHSCA's immunity provision to govern liability for common law tort claims.

Even if the DHSCA could be read to immunize a property owner from common law claims for trespass and nuisance, Blades Development cites no evidence that the BDA or the COCR covers liability for the alleged PFAS contamination at issue here. Plaintiffs' statement of facts states that "[t]he remedial action carried out by DNREC at the site did not test for or

---

[21] Although Plaintiffs cited *Garvin* in their answering briefs to both the motion to dismiss and the pending motion for summary judgment, Blades Development did not address *Garvin* in any of its briefing on those two motions. (D.I. 121 at 14; D.I. 129; D.I. 460; D.I. 462 at 6-7; D.I. 469)

address PFAS contamination" and, consequently, neither the COCR nor the BDA addressed PFAS contamination discovered after the COCR was issued.  (D.I. 462-16 at ¶¶ 5-7)  The accompanying evidence shows that the alleged PFAS contamination was not among the "existing environmental conditions" addressed by the BDA.  (D.I. 462 at 8-11; *see* D.I. 460, Ex. B at ¶ 6)  Specifically, the Phase II Site Investigation Report issued in February of 2007 shows sampling results tested for various metals, cyanide, certain specified volatile and semi-volatile compounds, pesticides, polychlorinated biphenyls, and polycyclic aromatic hydrocarbons, but not for PFAS.  (D.I. 462, Ex. C at 7-10, 18)  The EPA Superfund Program proposed plan from June of 2023 further confirmed that "[i]nvestigations prior to 2018 did not include the collection or analysis of PFAS."  (*Id.*, Ex. F at 4)  Blades Development cites no evidence contradicting Plaintiffs' representation that the BDA did not contemplate PFAS contamination.  (D.I. 460)

Blades Development appears to abandon the argument that the BDA and/or the COCR immunize it from liability in its reply brief.  (D.I. 469)  Instead, Blades Development raises new arguments in reply.  Specifically, Blades Development contends that it is not responsible for contamination that occurred before it assumed ownership of the site and faults Plaintiffs for failing to provide evidence that the PFAS contamination originated from the property owned by Blades Development.  (*Id.* at 1-5)  Blades Development is not permitted to reserve material for a reply brief that could and should have been included in the opening brief.  *Fed. Election Comm'n v. O'Donnell*, 209 F. Supp. 3d 727, 737 (D. Del. 2016) (citing D. Del. LR 7.1.3(c)(2)); *see also In re Niaspan*, 67 F.4th at 135 ("Arguments raised for the first time before a district court in a reply brief are deemed forfeited.").

Even if the court were to consider the new arguments raised in Blades's reply brief, the recommended outcome would remain the same.  In their concise statement of facts, Plaintiffs cite

evidence supporting their assertions that: (i) the EPA identified the presence of PFAS at the Peninsula site and designated the site as a likely source of groundwater contamination in Blades; (ii) the remedial action carried out by DNREC at the Peninsula site did not test for or address PFAS contamination; and (iii) Blades Development has not undertaken any action to remediate the PFAS contamination on the Peninsula site despite knowledge of PFAS migration from its site into the groundwater in Blades.  (D.I. 462-16)  Blades Development does not provide a counterstatement of facts and cites no evidence in support of the new arguments in its reply brief. Instead, Blades Development alleges that "Plaintiffs provide no evidence that PFAS originated from Blades Development's site and infiltrated the groundwater of the Town of Blades—let alone that such contamination occurred after Blades Development owned the property at issue." (D.I. 469 at 1)  These allegations confirm the existence of genuine issues of material fact, including whether the PFAS groundwater contamination can be attributed to the Peninsula site, whether the PFAS contamination continued to migrate from the Peninsula site after Blades Development acquired the property, and/or whether any such migration or continued contamination is attributable to Blades Development's failure to remediate known PFAS contamination at the site.  The existence of disputed issues of fact precludes the entry of summary judgment.

## III.    CONCLUSION

For the foregoing reasons, I recommend that the court: (1) DENY Defendants' motion to exclude Dr. Laton's testimony, (D.I. 437); (2) DENY Plaintiffs' motion for class certification, (D.I. 464); and (3) DENY Blades Development's motion for summary judgment, (D.I. 459).

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties.  In

the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **February 17, 2026**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 10, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE